Merlyn **MANTLE** and Roy J. True, Independent Co–Executors of the Estate of Mickey Mantle, Plaintiffs,

v.

The **UPPER DECK COMPANY** and **Upper Deck Authenticated, Ltd., Defendants.**

Civil Action No. 3:94–CV–2581–D.

United States District Court, N.D. Texas, Dallas Division.

Jan. 31, 1997.

James A. Pikl (argued), of True & Sewell, L.L.P., Dallas, TX, for plaintiffs.

Michael Lowenberg (argued), of Akin, Gump, Strauss, Hauer & Feld, Dallas, TX, Regina Giovannini and Christopher M. Brown, of Brown, Parker & Leahy, L.L.P., Houston, TX, and Jon L. Edwards, of Raifman & Edwards, San Francisco, CA, for defendants.

1. In the briefs, the term "Upper Deck" is sometimes used to refer to UDC or UDA or to both. Where "Upper Deck" has been used in the briefs and the context does not appear to require further specification, the court likewise uses the term "Upper Deck."

*MEMORANDUM OPINION*
*AND ORDER*

FITZWATER, District Judge.

Plaintiffs move to confirm an arbitration award and for entry of judgment on the award. Defendants move to vacate the award. Except for post-judgment interest, which is a matter for this court to award in its judgment, and plaintiffs' request in this proceeding for recovery of attorney's fees that were awarded plaintiffs in the event of an "appeal," the court grants plaintiffs' motion and denies defendants' motion for the reasons that follow.

**I**

In 1994 the late Mickey Mantle ("Mantle") sued defendants The Upper Deck Company ("UDC") and Upper Deck Authenticated, Ltd. ("UDA")[1] for breaches of an Endorsement & Personal Services Agreement ("Agreement") that the parties had entered into in 1992. Following removal of the case to this court, the parties on February 10, 1995 entered into an agreed order staying the litigation, and referring their disputes to arbitration "in accordance with Section 11 of the [Agreement] and Section 4 of the Federal Arbitration Act, 9 U.S.C. § 4." *See* Feb. 10, 1995 Order. Prior to commencement of the arbitration proceeding, Mantle died, and Merlyn Mantle ("Mrs. Mantle") and Roy J. True ("True"), Independent Co–Executors of the Estate of Mickey Mantle, succeeded him as plaintiffs.

The American Arbitration Association ("AAA") selected a three-member commercial arbitration tribunal ("Tribunal") to conduct the proceeding, and designated Robert E. Wood, Esq. ("Arbitrator Wood") as presiding arbitrator. Following a hearing, the Tribunal entered an award ("Award") in favor of plaintiffs[2] against UDC and UDA, jointly and severally, for actual damages in the amount of $2,725,258.00, $1 million in exemplary damages, $1,241,628.00 in attor-

2. The Award is made to "The Estate of Mickey Mantle by and through its Independent Co–Executors, Merlyn L. Mantle and Roy S. True." Award at 1.

ney's fees, $200,000 in the event an appeal is perfected, and 10% interest from the date of the Award until paid. The Tribunal also denied defendants' counterclaim.[3] Award at 1.

Plaintiffs apply to the court pursuant to 9 U.S.C. § 9 to confirm and enter judgment on the Award. Plaintiffs also request that the court order defendants to pay the additional sum of $200,000 awarded by the Tribunal in the event of an appeal, contending the instant proceeding is in the nature of an appeal.

Defendants move the court pursuant to § 171.014(a) of the Texas General Arbitration Act ("TGAA"), Tex. Civ. Prac. & Rem.Code Ann. § 171.014(a) (West Supp.1997), to vacate the Award and to deny plaintiffs' application for confirmation and judgment. Several of defendants' arguments in support of vacatur relate to the underlying contention that Tribunal members improperly reviewed privileged documents that UDA's former president, Stuart Ellis ("Ellis"), had stolen from UDA and later disclosed to the Tribunal in response to a subpoena. Defendants contend that because the Tribunal read these documents, the arbitration proceeding was infected with evident partiality, the Tribunal prejudiced their rights through misconduct and willful misbehavior, the Award was procured through undue means, the Tribunal exceeded its authority in rendering the Award, and the Tribunal manifestly disregarded the law. Defendants separately posit on several grounds that the award of $1 million in punitive damages is infirm; that the Tribunal awarded damages based on contracts that are not subject to the Agreement's arbitration provision; and that the Tribunal erred in awarding prejudgment interest on exemplary damages, prejudgment interest compounded daily rather than annually, and post-judgment interest in excess of the federal rate.

## II

Before reaching the merits of defendants' motion, the court addresses a threshold procedural matter.

Plaintiffs urge that defendants have failed to plead, and have therefore waived, any arguments based on federal law. They point out that the court ordered arbitration in accordance with the Federal Arbitration Act ("FAA"), and that although Texas law is the parties' choice of substantive law, federal arbitration law otherwise controls. Defendants assert that the Award must be overturned regardless whether the court does so on the basis of the FAA or the TGAA, because the statutes are nearly identical, and both support vacatur. Citing a principle of preemption, they also contend "the law does not suggest that the TGAA should not apply." Ds. Rep. at 1 n. 1. Defendants assert further that the Tribunal stated that it was operating under the TGAA. *Id.*

■ The court agrees with plaintiffs that the analysis of the parties' motions, and in particular defendants' motion to vacate, is to be conducted under the standards of the FAA. There appears to be some uncertainty in the Fifth Circuit as to whether the standards for court review of arbitration awards may be modified or expanded by agreement of the parties. One panel has held that the FAA must apply where, as here, the contract in question evidences a transaction involving commerce, "notwithstanding any choice of law provision or state law to the contrary." *See Atlantic Aviation, Inc. v. EBM Group, Inc.,* 11 F.3d 1276, 1279–80 (5th Cir.1994). Recently, another panel has held that the parties may expand the scope of judicial review by express agreement. *See Gateway Technologies, Inc. v. MCI Telecoms. Corp.,* 64 F.3d 993, 996–97 (5th Cir.1995) (holding that parties' contractual agreement to expand judicial review supplemented the FAA's default standard of review and permitted *de novo* review of issues of law).

It is clear, however, that the FAA provides the exclusive standard of review for defendants' motion to vacate in the present case. The parties agreed to, and the court ordered, arbitration in accordance with § 4 of the FAA, 9 U.S.C. § 4. *See* Feb. 10, 1995 Order. Although the arbitration agreement provides

---

3. The Tribunal assessed its administrative fees and expenses equally to each side, and ordered

that each side pay its own remaining costs and expenses.

that Texas law will govern substantive disputes in arbitration, the agreement contains no express provision, as in *Gateway*, that is intended to modify the scope of judicial review of an arbitration award. Regardless whether it is permissible to expand the scope of judicial review by agreement, there is no support for enlarging review in the absence of the clearly expressed intent of the parties. Because the parties have not provided expressly for expanded judicial review, the default standard of the FAA applies.

The court rejects plaintiffs' assertion that defendants' reliance upon the TGAA in their motion to vacate constitutes a waiver of any arguments based on federal law. In their brief, defendants cite numerous federal authorities in support of their motion to vacate. Moreover, where, as here, the FAA and TGAA are similar, *compare* 9 U.S.C. § 10(a) (Supp.1996) *with* Tex. Civ. Prac. & Rem. Code Ann. § 171.014(a) (West Supp.1997), the court deems it appropriate to apply the general rule that it must look to the substance rather than to the form of defendants' pleading. *See Darby v. Pasadena Police Dep't*, 939 F.2d 311, 315 (5th Cir.1991). Accordingly, in deciding the defendants' motion, where a ground for vacatur, although supported by citation to the TGAA, sets forth a basis provided under the FAA, the court will apply the relevant provision of the FAA. In each instance, federal law will apply.

### III

■ Under the FAA, the court reviews the Tribunal's Award under a highly deferential standard. The standard of review for arbitration awards has been described as "among the narrowest known to the law." *ARW Exploration Corp. v. Aguirre*, 45 F.3d 1455, 1462 (10th Cir.1995) (quoting *Litvak Packing Co. v. United Food & Commercial Workers, Local Union No. 7*, 886 F.2d 275, 276 (10th Cir.1989)); *see also Antwine v. Prudential Bache Secs., Inc.*, 899 F.2d 410, 413 (5th Cir.1990) ("review of an arbitration award is extraordinarily narrow"). The court may not vacate the Tribunal's award based on mere errors in interpretation or application of the law, or mistakes in factfinding. *See United Paperworkers Int'l Un-*

*ion v. Misco, Inc.*, 484 U.S. 29, 38, 108 S.Ct. 364, 370–71, 98 L.Ed.2d 286 (1987); *see also Gingiss Int'l, Inc. v. Bormet*, 58 F.3d 328, 333 (7th Cir.1995) ("Factual or legal errors by arbitrators—even clear or gross errors—do not authorize courts to annul awards."); *ARW*, 45 F.3d at 1463 ("An arbitrator's erroneous interpretations or applications of law are not reversible."); *Robbins v. Day*, 954 F.2d 679, 683 (11th Cir.) (FAA does not allow an arbitration award to be vacated solely on the basis of an error of law or interpretation, but requires some kind of misconduct), *cert. denied*, 506 U.S. 870, 113 S.Ct. 201, 121 L.Ed.2d 143 (1992), *overruled in part on other grounds by First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, ——, 115 S.Ct. 1920, 1926, 131 L.Ed.2d 985 (1995). By consenting to arbitration, parties exchange "the procedures and opportunity for review of the courtroom for the simplicity, informality, and expedition of arbitration." *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth. Inc.*, 473 U.S. 614, 628, 105 S.Ct. 3346, 3354–55, 87 L.Ed.2d 444 (1985).

The grounds for vacatur of an arbitration award are set forth in § 10(a) of the FAA, which provides that a court may vacate an award:

(1) Where the award was procured by corruption, fraud, or undue means.

(2) Where there was evident partiality or corruption in the arbitrators . . . .

(3) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced.

(4) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a).

■ Some courts have also considered "manifest disregard of the law" as a proper basis for vacating an award. The Fifth Circuit holds, however, that § 10 of the FAA

sets forth the exclusive grounds on which vacatur may be founded. *See McIlroy v. PaineWebber, Inc.*, 989 F.2d 817, 820 (5th Cir.1993) (per curiam) (citing *R.M. Perez & Assocs., Inc. v. Welch*, 960 F.2d 534 (5th Cir.1992)). "Manifest disregard for the law" and all other judge-made grounds for vacatur have been expressly rejected. *See id.* at 820 n. 2.

## IV

Defendants move the court to vacate the Award on various grounds related to documents that Ellis obtained from Upper Deck, and later disclosed in response to a Tribunal subpoena. Defendants contend the documents contained privileged materials, most significantly, the mental impressions of Upper Deck's general counsel regarding his assessment of the settlement value of Upper Deck's dispute with plaintiffs.

### A

Defendants maintain that on May 2, 1996—11 days prior to commencement of the arbitration hearing—the AAA, at plaintiffs' request, subpoenaed documents from Ellis. They assert that Ellis is a disgruntled former UDC president and UDA senior executive, against whom Upper Deck had filed suit in California state court in 1995. Defendants moved the AAA to quash the subpoena, and also sought a temporary restraining order ("TRO") from the California state court to enjoin Ellis from disseminating the documents.

On May 6, 1996 Arbitrator Wood conducted a telephonic hearing to consider the motion to quash. Arbitrator Wood and the parties agreed during the hearing that the documents would be delivered to him under seal, and that pending the outcome of the TRO hearing in California, Arbitrator Wood would neither open nor read the documents. If the TRO was granted, Arbitrator Wood would return the documents without opening or reading them. Arbitrator Wood also ruled that the subpoena would be quashed unless Richard A. Lucal, Esq. ("Lucal"), Ellis' counsel, provided an inventory of the documents and certified that to the best of his knowledge they did not contain information protected by any privilege available to Upper Deck. Arbitrator Wood did not allow Upper Deck to review or assert privileges concerning documents in Ellis' possession.

On May 7 Arbitrator Wood conducted another telephonic hearing concerning the documents. Defendants assert that plaintiffs' counsel, James A. Pikl, Esq. ("Pikl"), advised Arbitrator Wood that the TRO had not been granted, thereby creating the false impression that the California court had denied the TRO request. In fact, the hearing had been delayed until May 8. Pikl also informed Arbitrator Wood that Lucal did not wish to prepare the document log. The parties then agreed that Lucal would send the documents directly to Upper Deck's counsel, who, in turn, would prepare a privilege log for Arbitrator Wood's review. Lucal did not send the documents to Upper Deck.

On May 8 the California court granted the TRO, thereby enjoining Ellis and all others acting in concert with him (which defendants contend includes Lucal) from discussing or releasing any documents that pertained to Upper Deck's business and that Ellis received during his employment. Defendants contend they provided plaintiffs and the AAA with copies of the TRO and requested that the Ellis documents be returned unopened. Plaintiffs argued *inter alia* that the documents should not be returned because they were not privileged. Lucal prepared an inventory log of the documents but did not accurately reflect that some of the documents contained privileged materials. Lucal did not prepare a certification regarding the absence of any privilege claim that Upper Deck would have to the documents.

On the same date, the AAA advised Upper Deck that Arbitrator Wood had directed it to assert any privileges to the documents— which were 500 in number—by 9:00 a.m. the next morning. Upper Deck could not view the documents and was forced to identify them based on the Lucal inventory.

On May 9 Arbitrator Wood conducted a telephonic hearing concerning the TRO and the assertion of privilege. Defendants argued on the basis of the TRO that the documents should be returned; plaintiffs asserted

that the TRO did not apply. Arbitrator Wood stated that he should return the documents unopened and unread. Later that day, however, he advised Upper Deck's counsel that he had read the documents, and that he intended to turn over all but two because he did not consider them to be privileged. As to the two, he stated the belief that they might be protected by the attorney-client privilege, and he requested additional information. They agreed that the documents would not be turned over to plaintiffs until after a hearing the next day.

During the May 10 hearing, Upper Deck asserted that the two documents in question were privileged, and requested that Arbitrator Wood excuse himself from the Tribunal because his review of privileged documents compromised his neutrality. Arbitrator Wood determined that the other arbitrators would be consulted concerning the privilege issue. He reiterated that the remainder of the documents would be released. Upper Deck again renewed its request to assert privilege claims as to all the documents. Arbitrator Wood granted the request, agreed to provide the documents to Upper Deck on Saturday, and set a Monday deadline (the date the arbitration hearing was scheduled to start) for Upper Deck to substantiate its claims of privilege. If Upper Deck failed to do so, all documents except the two in question would be disclosed to plaintiffs. Upper Deck did not receive the documents on Saturday.

### B

Defendants maintain that Arbitrator Wood was precluded from impartially adjudicating the dispute because he viewed Upper Deck's assessment of the settlement value of the case. This contention invokes 9 U.S.C. § 10(a)(2), which provides for vacatur of an arbitration award "[w]here there was evident partiality or corruption in the arbitrators...."

### 1

Although the Fifth Circuit has stated in *dicta* that the "appearance of bias" is insuffi-

cient to warrant vacatur, the standard for vacating an arbitration award for evident partiality has not been definitively addressed in this circuit. *See Bernstein Seawell & Kove v. Bosarge*, 813 F.2d 726, 732 (5th Cir.1987) (citing *Sheet Metal Workers Int'l Ass'n v. Kinney Air Conditioning Co.*, 756 F.2d 742, 746 (9th Cir.1985)).

In *Commonwealth Coatings Corp. v. Continental Casualty Co.*, 393 U.S. 145, 150, 89 S.Ct. 337, 340, 21 L.Ed.2d 301 (1968) (plurality opinion), the Supreme Court issued a divided opinion addressing the meaning of "evident partiality." The challenged arbitrator in that case had earned several thousand dollars over a period of years for consulting services rendered to the prevailing party, including services related to the subject of arbitration. The arbitrator did not disclose this relationship to the losing party. The Court held that the arbitrator's failure to make this disclosure warranted setting aside the award for evident partiality. Justice Black authored a plurality opinion, joined by Justices Fortas, Harlan, and Stewart, that set a high standard for the conduct of arbitrators. Justice Black wrote that because of the free reign given to arbitrators they must "avoid even the appearance of bias." *Id.*

Justice White, joined by Justice Marshall, concurred, but joined only in the Court's holding that where an arbitrator has a substantial interest in a firm that has done more than trivial business with a party, that fact must be disclosed. *Id.* at 151–52, 89 S.Ct. at 340–41. The concurrence declined to hold that arbitrators are to be held to the standards of judicial decorum of Article III judges, or indeed of any judges. *Id.* at 150, 89 S.Ct. at 340. A majority of the Court did not adopt the "appearance of bias" standard set out in the plurality opinion, and the concept of "evident partiality" was not addressed outside the context of disclosure.

■ Most courts have followed Justice White's concurrence and have rejected "appearance of bias" as the relevant standard where nondisclosure is not alleged.[4] *See, e.g., Schmitz v. Zilveti*, 20 F.3d 1043, 1047 (9th Cir.1994) (holding that in actual bias

---

4. Because nondisclosure is not alleged in this case, there is no need to reach the question

whether *Commonwealth Coatings'* "appearance of bias" standard should be applied.

case, as opposed to nondisclosure case, court must find actual bias); *Kaplan v. First Options of Chicago, Inc.*, 19 F.3d 1503, 1523 n. 30 (3d Cir.1994), *aff'd*, 514 U.S. 938, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995); *Peoples Sec. Life Ins. Co. v. Monumental Life Ins. Co.*, 991 F.2d 141, 146 (4th Cir.1993); *Apperson v. Fleet Carrier Corp.*, 879 F.2d 1344, 1358 (6th Cir.1989), *cert. denied*, 495 U.S. 947, 110 S.Ct. 2206, 109 L.Ed.2d 533 (1990); *Morelite Constr. v. New York City Dist. Council Carpenters Benefit Funds*, 748 F.2d 79, 82–84 (2d Cir.1984); *International Produce, Inc. v. A/S Rosshavet*, 638 F.2d 548, 551 (2d Cir.), *cert. denied*, 451 U.S. 1017, 101 S.Ct. 3006, 69 L.Ed.2d 389 (1981). In its place, courts have adopted a case-by-case objective inquiry into partiality. *See Morelite*, 748 F.2d at 84 (holding that complaining party must show that "a reasonable person would have to conclude that the arbitrator was partial to one party"); *Apperson* 879 F.2d at 1358 (adopting *Morelite* standard); *Kaplan*, 19 F.3d. at 1523 (adopting *Morelite* standard from *Apperson*); *Peoples Sec. Life*, 991 F.2d at 146 (same); *Merit Ins. Co. v. Leatherby Ins. Co.*, 714 F.2d 673, 681–82 (7th Cir.) (noting that, read literally, "evident partiality" might require proof of actual bias but suggesting that if the circumstances are "powerfully suggestive of bias" such that "a man of average probity might reasonably be suspected of partiality" vacatur might be warranted), *cert. denied*, 464 U.S. 1009, 104 S.Ct. 529, 78 L.Ed.2d 711 (1983). Under these standards, there is an onerous burden on a party urging vacatur based on evident partiality. *See Peoples Sec. Life*, 991 F.2d at 146 (citing *Health Servs. Mgmt. Corp. v. Hughes*, 975 F.2d 1253, 1258 n. 3 (7th Cir.1992)); *Al–Harbi v. Citibank, N.A.*, 85 F.3d 680, 683 (D.C.Cir.) (the burden is a heavy one and the standard for vacatur is onerous), *cert. denied*, —— U.S. ——, 117 S.Ct. 432, 136 L.Ed.2d 331 (1996). The party asserting evident partiality has the burden of proof. *Peoples Sec. Life*, 991 F.2d at 146 (citation omitted). It must produce specific facts and the alleged partiality must be "direct, definite, and capable of demonstration rather than remote, uncertain, or speculative." *Id.; Health Servs. Mgmt.*, 975 F.2d at 1264; *Florasynth. Inc. v. Pickholz*, 750 F.2d 171, 173–74 (2d Cir.1984).

Despite defendants' citation of *Commonwealth Coatings* for the proposition that arbitrators must avoid even the appearance of bias, *see* Ds. Br. at 16, the parties appear to agree that defendants' allegations should be reviewed under the standard announced in *Morelite* and adopted in *Apperson*. *See* Ps. Br. at 10; Ds. Rep. Br. at 4 n. 6. The court is persuaded that this is the appropriate standard for review. To allow awards to be vacated on a lesser showing would seriously disrupt the arbitration process. The *Morelite* standard recognizes the difficulty inherent in proving actual bias while protecting this circuit's policies favoring limited review of arbitration awards. *See ARW*, 45 F.3d at 1462. Section 10 requires "evident partiality." To vacate an award upon the mere appearance of partiality would be contrary to the statutory language.

## 2

 Defendants cannot show that a reasonable person would have to conclude that Arbitrator Wood was partial to plaintiffs because he read the Ellis documents. Arbitrators must review documents to make rulings on discovery and privilege issues. The parties selected Arbitrator Wood, the presiding arbitrator, to perform that function in this case. Defendants maintain that this court should review Arbitrator Wood's impartiality more scrupulously because he was a trier of fact as well as law. Courts have rejected, however, the notion that arbitrators are held to a higher standard of impartiality than are Article III judges. *See Peoples Sec. Life*, 991 F.2d at 146; *Florasynth* 750 F.2d at 173–74; *Commonwealth Coatings*, 393 U.S. at 150, 89 S.Ct. at 340 ("The Court does not decide today that arbitrators are to be held to the standards of judicial decorum of Article III judges, or any judges."). Moreover, even when judges sit as triers of fact they are presumed competent to hear prejudicial information without becoming biased or partial. *Cf. Gulf States Utils. Co. v. Ecodyne Corp.*, 635 F.2d 517, 519 (5th Cir. Unit A Jan.1981) (holding that evidence should not be excluded from bench trial on grounds of prejudice under Fed.R.Evid. 403); *Government of Canal Zone v. Jimenez G.*, 580 F.2d 897, 898 (5th Cir.) (per curiam) ("[A] judge

sitting as a trier of fact is presumed to rest his verdict on admissible evidence and to disregard the inadmissible."), *cert. denied,* 439 U.S. 990, 99 S.Ct. 590, 58 L.Ed.2d 664 (1978). If defendants had wanted this dispute resolved by an Article III judge and a jury, they could have refused to enter into an arbitration clause in the Agreement. Having elected their method of dispute resolution, defendants can ask for no more impartiality than inheres in the method they have chosen. *See Merit Ins.,* 714 F.2d at 679.

This reasoning is not altered by the fact that the documents the Tribunal allegedly viewed contained an assessment by Upper Deck's general counsel of the settlement value of the case. Defendants have not adequately distinguished this type of disclosure from any other potentially prejudicial information. *Cf. In re Asbestos Litig.,* 90 F.3d 963, 989 (5th Cir.1996) (upholding judge's participation in a hearing on fairness of settlement after he had participated in mediation efforts). Defendants rely primarily on two passages from AAA materials that state that arbitrators should not participate in or view settlement discussions. Assuming these standards govern this case, the record affirmatively reflects that Arbitrator Wood never participated in or viewed settlement discussions. There is nothing in the record to show that the views of Upper Deck's counsel represent anything more than a unilateral opinion, not a negotiated sum.

■ The court rejects as meritless defendants' argument that all a party need show to vacate an award is that an arbitrator viewed a potentially prejudicial document.[5] It is not widely held that arbitrators are so impressionable that exposure to prejudicial documents inexorably leads to partiality. Defendants have offered no evidence that the Award was in fact tainted by bias, that Arbitrator Wood had an interest in the subject of arbitration, or that the documents were so

inherently prejudicial as to dim the prospect of impartial adjudication. Arbitrator Wood's appointment to the Tribunal was reviewed by the Tribunal and reaffirmed by the disinterested AAA. The court declines to vacate the Award on the basis of evident partiality.

## C

Defendants maintain that Arbitrator Wood committed misconduct and willful misbehavior that prejudiced their rights. This argument rests on 9 U.S.C. § 10(a)(3).

The first act of misconduct and willful misbehavior attributed to Arbitrator Wood is his review of the subpoenaed documents. Defendants contend that by reading the documents, Arbitrator Wood violated his agreement with the parties and his prior ruling and also deprived Upper Deck of the right to assert privileges. Because the Tribunal determined not to produce any of the documents, *see* Tr. at 59, defendants' only claim of prejudice is from the documents' effect on Arbitrator Wood's ability to be impartial.[6]

■ The procedural aberrations on which defendants rely to support vacatur are insufficient to establish affirmative misconduct or willful misbehavior. Arbitration proceedings are not constrained by formal rules of procedure or evidence. *Robbins,* 954 F.2d at 685. By agreeing to arbitration, a party trades the procedures and opportunities for review of the courtroom for the simplicity, informality, and expedition of arbitration. *Mitsubishi Motors,* 473 U.S. at 628, 105 S.Ct. at 3354. Arbitrators should be expected to act affirmatively to simplify and expedite the proceedings before them. *Forsythe Int'l. S.A. v. Gibbs Oil Co. of Tex.,* 915 F.2d 1017, 1022 (5th Cir.1990). They need provide only a fundamentally fair hearing. *Totem Marine Tug & Barge Inc. v. North Am. Towing, Inc.,* 607 F.2d 649, 651 (5th Cir.1979). Courts reviewing arbitral awards may not superim-

---

5. Defendants rely primarily on *Overseas Private Inv. Corp. v. Anaconda Co.,* 418 F.Supp. 107 (D.D.C.1976). That decision concerns nondisclosure, an issue that is not germane in the present case, and is not in any event binding on this court.

6. Although defendants allege that plaintiffs may have seen the documents by obtaining them directly from Lucal, this is irrelevant to the propriety of Arbitrator Wood's actions. Arbitrator Wood was not responsible for policing contacts between plaintiffs and Lucal. Defendants must show misconduct by the Tribunal, not plaintiffs, to vacate the Award on the basis of § 10(a)(3).

pose rigorous procedural limitations upon the conduct of the arbitrators. *See Forsythe,* 915 F.2d at 1022.

Defendants aver that Arbitrator Wood violated his agreement to return the documents after the TRO was granted. It is disputed whether there was in fact an agreement to return the documents. Assuming *arguendo* that defendants are correct, Arbitrator Wood's decision not to return the documents was not in bad faith or so gross as to amount to affirmative misconduct. His agreement with the parties was an interlocutory evidentiary ruling. As such, it was subject to reconsideration. He was not obliged by the TRO or Ellis' secrecy agreement to return the documents. The procedure that controlled production of the documents was a matter within his discretion as the Tribunal member responsible for addressing discovery disputes. The present record reasonably supports only the finding either that he concurred with plaintiffs that the agreement did not require return of the documents, or that he reconsidered his prior ruling. Neither alternative could render the hearing fundamentally unfair. Defendants essentially ask this court to give the force of binding contracts to informal agreements made by an arbitrator and the parties concerning the handling of evidence. This would unduly infringe upon the broad discretion vested in arbitrators with respect to procedural matters.

 Defendants next complain that Arbitrator Wood violated his own ruling by failing to quash the subpoena. During a conference call on May 6, Arbitrator Wood ruled that the subpoena for the documents would be quashed unless Lucal provided a representation that, so far as he knew, the documents were not privileged. *See* Aff. of Regina Giovannini, Esq., Ex. D. Defendants assert that Lucal never made the required certification and that the subpoena should have been quashed. Even assuming that such an error could require vacatur, defendants' claim is contradicted by their own submissions. Lucal sent a privilege log to Tracy Hegeman, commercial supervisor for the AAA. *See id.* at Ex. C. Attached to the privilege log is a cover letter that contains the representation

that defendants allege was absent. The letter states that two documents should be discarded as privileged and that "[n]one of the other documents are identified as attorney-client privileged or are, to my knowledge, subject to that privilege." *See id.*

 Finally, defendants assert that Arbitrator Wood engaged in misconduct or willful misbehavior by reading the documents without allowing Upper Deck an opportunity to review them and assert privileges. Submission of disputes to arbitration always risks procedural and evidentiary shortcuts. *See Forsythe,* 915 F.2d at 1022. Defendants have offered no support for their position that a prior opportunity to assert privileges as to the documents in question was necessary to a fundamentally fair hearing. The case on which defendants rely, *RTC v. Diamond,* 137 F.R.D. 634 (S.D.N.Y. 1991), is inapposite. In *RTC* the court rejected a party's attempt to shift its burden of demonstrating privilege when it submitted all documents for *in camera* review and offered no more than vague and conclusory assertions of privilege. *Id.* at 642. There is no suggestion in *RTC* that denial of a prior opportunity to present privilege claims could render an arbitration process fundamentally unfair.

Arbitrator Wood was charged with the dual tasks of determining the privileged nature of documents and of providing a simple and expeditious arbitration proceeding. There is no allegation that he reviewed the documents intending to discover prejudicial information. If Arbitrator Wood's actions rendered the proceedings imperfect, this is part of the well-recognized price for the corresponding benefits of arbitration. *See Forsythe,* 915 F.2d at 1022.

Even assuming Arbitrator Wood's *in camera* review of the documents could constitute misconduct or willful misbehavior, defendants have not made an adequate showing of prejudice to warrant vacatur. Defendants cite *Gulf Coast Indus. Workers Union v. Exxon Co., USA,* 70 F.3d 847, 850 (5th Cir. 1995), and *Iran Aircraft Indus. v. Avco Corp.,* 980 F.2d 141, 146 (2d Cir.1992), in support of their position. Yet in both of these cases the courts held that the miscon-

duct deprived the party of the opportunity to present its case in a meaningful manner. *See also Totem Marine,* 607 F.2d at 651 (holding that *ex parte* communication had direct bearing on arbitrators' liability determinations). Defendants have offered no evidence that Arbitrator Wood's review of the documents had any impact on the Award. Defendants cannot avoid the standards relevant to review for evident partiality by casting the alleged bias as prejudice. As the court has discussed *supra* at § IV(B)(2), the mere showing that Arbitrator Wood viewed a potentially prejudicial document is not enough to demonstrate that Upper Deck's rights were thereby prejudiced.

**D**

Defendants contend that the Award was obtained through undue means. The court analyzes this argument according to 9 U.S.C. § 10(a)(1).

Defendants maintain that the deceptive acts of plaintiffs, Lucal, and Ellis, combined with Arbitrator Wood's misconduct and manifest disregard for the law, resulted in an award by undue means. According to defendants, plaintiffs deceived Arbitrator Wood and Upper Deck by entering into an agreement concerning the use of documents, without any intent to uphold the agreement. They assert that plaintiffs first misrepresented to Arbitrator Wood that the TRO had not been granted, when the hearing had only been rescheduled. Defendants assert that plaintiffs may have attempted to deceive the Tribunal by engineering and/or conspiring with Lucal to deliver the documents to Arbitrator Wood prior to issuance of the subpoena and/or prior to the May 6, 1996 hearing at which Upper Deck attempted to quash the subpoena. They aver that plaintiffs actively deceived Upper Deck by concealing until May 8 that the documents had already been produced, thereby compromising Upper Deck's right to assert privileges and to object to Arbitrator Wood's reading the documents. Finally, defendants contend that plaintiffs reneged on the agreement, after the California court granted the TRO, by asserting that because the documents were delivered to Arbitrator Wood prior to entry of the TRO,

they were not subject to the order. Defendants reason that these errors were compounded by Arbitrator Wood's selection of Lucal, who had an interest in effecting dissemination, to protect Upper Deck's privilege claims. Had Arbitrator Wood upheld the agreement and not read the documents, the deceptive acts would not have adversely affected the integrity of the arbitration proceeding.

 The court discerns no basis to upset the Award. The statute does not provide for vacatur in the event of any fraudulent conduct but only "where the award was procured by corruption, fraud, or undue means." *Forsythe,* 915 F.2d at 1022. This requires the party challenging an award to show a nexus between the alleged fraud and the panel's decision. *Id.* Where the panel hears the allegation of fraud and then rests its decision on grounds clearly independent of the issues connected to the alleged fraud, the statutory basis for vacatur is absent. *Id.*

Defendants cannot show that there was a nexus between the alleged fraud and the Tribunal's decision. Assuming there is a basis for condemning the conduct of plaintiffs' attorney, it does not extend to the Award. *Id.* at 1023. Indeed, it is not unreasonable to conclude that the Award in this case stems primarily from defendants' strategic decision to participate in only the most limited fashion in the arbitration hearing. While they did so in order not to waive errors that they contend had been committed, they also relinquished the opportunity to mount a cogent challenge to the claims that plaintiffs were making. It bears repeating that the principal, if not only, connection that defendants assert between the Award and the alleged improprieties is the effect that reviewing the documents may have had on Arbitrator Wood's impartiality. Under the rubric of § 10(a)(1), defendants are attempting to recast their allegation that the Award was tainted by evident partiality. The court's resolution of the instant ground is no different. Defendants have failed to show that Arbitrator Wood could not have impartially adjudicated the dispute. Their claim therefore fails.

**E·**

The fourth ground for vacatur is that Arbitrator Wood and the Tribunal as a whole exceeded their authority, which presents a question governed by 9 U.S.C. § 10(a)(4).

Defendants allege that Arbitrator Wood exceeded his authority by refusing to allow Upper Deck an opportunity to assert its privileges under Texas law and by breaching his agreement not to read the documents. Mere procedural irregularities, however, provide no basis upon which to conclude that the Tribunal exceeded its authority. *See Sheet Metal Workers,* 756 F.2d at 744. Rather, § 10(a)(4) is designed to enable the district court to vacate an arbitral award that clearly goes beyond the substantive issues submitted by the parties. *See id.* at 745 (citations omitted). Neither of defendants' allegations relates to the Tribunal's authority to act. Rather, each concerns misconduct and disregard for the law.

**F**

Defendants seek vacatur on the additional ground that Arbitrator Wood, and the Tribunal as a whole, manifestly disregarded the law by refusing to allow Upper Deck to assert privileges under Texas law. As noted, *see supra,* at § III, the Fifth Circuit does not recognize manifest disregard for the law as a basis for vacating an arbitration award.

**G**

Defendants assert as a separate ground for vacatur that Arbitrator Wood should have recused himself because this was the only way to remove the taint brought on the proceedings by his misconduct and willful misbehavior, manifest disregard for the law, and actions outside the scope of his authority, coupled with the bad acts of plaintiffs' counsel and Lucal.

When a party cannot successfully mount a charge of evident partiality, the decision to resign is left to the discretion of the arbitrator. *Florasynth,* 750 F.2d at 174. None of the actions identified by defendants shows that Arbitrator Wood was evidently partial to plaintiffs. If adverse decisions by an arbitrator were grounds for vacatur, no arbitration award could stand. Arbitrator Wood's decision not to recuse himself is not a proper ground for vacating the Award.

**V**

Defendants contend the Tribunal exceeded its powers and manifestly disregarded the law by awarding damages based on Chapter 26 of the Texas Property Code, Tex. Prop. Code Ann. §§ 26.001–26.015 (West Supp. 1997). They assert that Chapter 26 does not apply; there can be no punitive damages in a breach of contract case; plaintiffs lack standing; the Award does not differentiate between actual damages attributable to the Chapter 26 claim and actual damages attributable to the contract claim; and the Chapter 26 claim was not properly before the Tribunal.

**A**

As a preliminary matter, the court addresses defendants' contention that Chapter 26 does not create an independent cause of action.

Texas courts have not yet had occasion to provide guidance concerning the proper interpretation of Chapter 26. Applying general principles of statutory interpretation, however, the court concludes that § 26.013 creates an independent cause of action. Unless the language of a statute is unclear or ambiguous, it should be interpreted according to its plain meaning, *See Moreno v. Sterling Drug, Inc.,* 787 S.W.2d 348, 352 (Tex.1990). Section 26.013(a) provides that "[a] person who uses a deceased individual's name, voice, signature, photograph, or likeness in a manner not authorized by this chapter *is liable* to the person who owns the property right" for the amount of any actual damages, profits from the unauthorized use, exemplary damages that may be awarded, and reasonable attorney's fees and court costs incurred in recovering such damages and profits. Tex. Prop.Code Ann. § 26.013(a) (West Supp.1997) (emphasis added). Furthermore, Chapter 26 is codified within Title 4 of the Property Code, which pertains to "Actions and Remedies." The statute's plain language indicates that the

Texas Legislature intended to create an independent cause of action. The use of the language "is liable," the specification of the types and amounts of damages that a person may obtain, and the placement of the chapter in the "Actions and Remedies" title, together support the conclusion that Chapter 26 is intended to do more than ensure that successors to publicity rights of a deceased person are able to maintain common law causes of action against persons who abridge those rights.

**B**

■■■ Defendants contend that Chapter 26 does not apply and that exemplary damages are not recoverable because plaintiffs' lawsuit raises only a breach of contract claim. The court disagrees. Plaintiffs' amended complaint alleges that the Agreement was terminated by conduct of defendants occurring before the death of Mantle, such that the subsequent use of Mantle's name, signature, image, or likeness gave rise to an independent claim under Chapter 26. True's testimony in the arbitration hearing supported these allegations. Chapter 26 provides a statutory right of action for the unauthorized use of a person's name, signature, or likeness after his death, and exemplary damages are made expressly recoverable by § 26.013(a)(3).

**C**

■■■ Defendants also contend that the Tribunal's Award must be vacated because plaintiffs lack standing to sue under Chapter 26. Defendants assert that registration with the Secretary of State is a prerequisite to exercising Mantle's publicity rights, and there is no evidence in the record that indicates that plaintiffs or the Mantle estate ever registered a claim to ownership. Although there is no conclusive evidence in the record that plaintiffs registered their claim of ownership to Mantle's publicity rights, defendants' contention must fail. Section 26.008(b) provides that "[f]or the first year following the death of the individual, an owner of a property right may exercise that right only if the owner registers a valid claim as provided by 26.006." Tex. Prop.Code Ann.

§ 26.008(b) (West Supp.1997). It is undisputed that the ownership of Mantle's publicity rights was transferred to members of his immediate family at his death. It is also uncontested that Mrs. Mantle and True, as co-executors of Mantle's estate, have the authority to exercise those rights pursuant to § 26.008(a). Because case law interpreting Chapter 26 is limited or nonexistent, and it is not clear that maintenance of a lawsuit for unauthorized use of publicity rights constitutes "exercise" of publicity rights within the meaning of § 26.008(b), any error committed by the Tribunal due to an absence of evidence of registration is at most an error of law, and thus does not provide a basis for vacatur under the FAA. Moreover, assuming *arguendo* that plaintiffs were responsible for registering their ownership rights under § 26.008(b), the award by the Tribunal under Chapter 26, without evidence of registration in the record, constitutes no more than a mistake of fact. A mistake of fact does not provide a basis for vacatur under the FAA.

**D**

■■■ Defendants maintain that the Tribunal's award violates their due process rights because it does not differentiate between the amount of actual damages attributable to the breach of contract claim and the amount of actual damages attributable to the Chapter 26 claim. The court disagrees.

■■■ First, constitutional due process protections do not extend to private conduct that abridges individual rights. *See Davis v. Prudential Secs., Inc.*, 59 F.3d 1186, 1190–91 (11th Cir.1995) (citing *National Collegiate Athletic Ass'n v. Tarkanian*, 488 U.S. 179, 191, 109 S.Ct. 454, 461–62, 102 L.Ed.2d 469 (1988)). Where, as here, the challenged actions are those of private arbitrators, the state action element of a due process claim is lacking. *See id.*

Second, even if the court assumes *arguendo* that the state action requirement has been met, defendants have not established that their due process rights were abridged. In support of their due process argument, defendants cite *BMW of North Am., Inc. v. Gore*, —— U.S. ——, 116 S.Ct. 1589, 134

L.Ed.2d 809 (1996). In *BMW* the Supreme Court held that where an award of punitive damages is "grossly excessive" in relation to state interests in punishment and deterrence of a certain type of conduct, it may be so arbitrary as to violate due process. *Id.* —— U.S. ——, 116 S.Ct. at 1604.

Although defendants do not clearly explain to the court why *BMW* mandates the conclusion that their due process rights have been violated, they presumably contend that the failure of the Tribunal to distinguish between the actual damages awarded on the contract claim and the actual damages awarded on the Chapter 26 claim so limits the court's ability to review the award of punitive damages for excessiveness that due process has been violated.[7]

*BMW* addressed the appropriate standards, however, for meaningful review of a jury award of punitive damages. The Court did not modify the highly deferential standards by which arbitration awards are to be evaluated. Other courts have indicated that an arbitration award may not be vacated if there is *any* evidence to support an award of actual damages, and *any* evidence of intentional, fraudulent, or malicious conduct. *Cf., e.g., Glennon v. Dean Witter Reynolds. Inc.,* 83 F.3d 132, 138–39 (6th Cir.1996) (holding under a "manifest disregard of the law" standard that an arbitration award of punitive damages will not be overturned as excessive unless there is no evidence to support compensatory damages or the existence of intentional, fraudulent, malicious, or reckless conduct).

In the present case, there was evidence in the record to support both an award of actual damages and a finding of intentional or malicious conduct with respect to the Chapter 26 claim. True testified that the Mantle estate suffered actual damages of approximately $700,000 from sales of Mantle merchandise after his death. Tr. at 80. Other portions of the hearing record support the conclusion that defendants were well-aware that the Agreement had been terminated by their prior breach, and that they no longer had a

license to sell merchandise bearing Mantle's name, signature, image, or likeness. From this evidence the Tribunal could have concluded that defendants blatantly and intentionally disregarded plaintiffs' rights, and did so without the intent to pay for the use of those rights. Accordingly, there is a basis in the record for an award of exemplary damages.

### E

Defendants contend that the Tribunal exceeded its powers in addressing Mantle's Chapter 26 claim because the award of exemplary damages under Chapter 26—if legitimate—would have mandated a factual finding by the Tribunal that the Agreement had terminated and that defendants acted tortiously when they marketed goods containing the name, signature, image, or likeness of Mantle after his death. Defendants contend that such a tort claim could not be construed to be a controversy arising out of or relating to the construction or application of the terms, provisions, or conditions of the Agreement, and therefore was outside the scope of issues submitted to arbitration.

 The court holds that defendants have waived their objections to the Tribunal's authority to address the arguably-independent tort claim, because they failed to object to arbitrability of the claim during the hearing. It is well-established that a party may not participate in arbitration without objecting to the arbitrator's authority to address a particular issue, only to challenge the authority of the arbitrator to address the issue after obtaining an unfavorable result. *See Comprehensive Accounting Corp. v. Rudell,* 760 F.2d 138, 140 (7th Cir.1985) (citing *Fortune, Alsweet & Eldridge, Inc. v. Daniel,* 724 F.2d 1355, 1357 (9th Cir.1983) (per curiam)).

Defendants cross-examined True regarding plaintiffs' claim pursuant to the Code, and acknowledged that plaintiffs were asserting a claim for exemplary damages under Chapter 26. Despite the fact that they clearly had notice of plaintiffs' claim, defendants

---

7. *BMW* holds that the ratio of exemplary damages to actual damages is one of three primary bases for evaluating the excessiveness of an ex-

emplary damage award. *BMW,* —— U.S. at ——, 116 S.Ct. at 1601.

never objected to the Tribunal's authority to address it under the parties' contractual arbitration agreement and the agreed order compelling arbitration. Defendants cannot fail to raise such a defect, hope for a favorable result on the merits, and after suffering an adverse ruling, seek to reject the Award on the basis of a defect that they could easily have raised prior to or during the hearing. They cannot essentially remove to district court a matter that might have been efficiently and correctly resolved in arbitration, thereby frustrating the policy of promoting speedy resolution of disputes out of court through arbitration. *See Fortune,* 724 F.2d at 1357.

Accordingly, the court concludes that defendants have waived their objections to the arbitrability of the Chapter 26 claim.

### VI

■■■ Defendants also assert that the Tribunal erred by failing to specify with particularity the amount of exemplary damages assessed against each defendant. *See* Tex. Civ. Prac. & Rem.Code Ann. § 41.006 (West Supp.1997). The Award simply states that plaintiffs shall recover from UDC and UDA "jointly and severally, the sum of [$1 million] for exemplary damages." Award at 1. It is apparent that the Tribunal intended that each defendant be equally liable. To the extent the Tribunal failed to meet the statutory requirements for assessing exemplary damages, however, it committed a mere error of law, which is insufficient to warrant vacatur of the Award.

### VII

Defendants also challenge the Award on the basis that the Tribunal denied their request for a continuance until after May 28, 1996, the date of the preliminary injunction hearing in the California lawsuit against Ellis. Defendants maintain that the hearing should have been postponed because sufficient cause was shown. This contention is addressed in the context of § 10(a)(3) of the FAA, which permits an award to be vacated "[w]here the arbitrators were guilty of misconduct in refusing to postpone the hearing,

upon sufficient cause shown ... by which the rights of any party have been prejudiced."

■■■ A court's review of an arbitrator's refusal to grant a postponement is confined to determining whether the refusal to postpone was a result of misconduct. *Agarwal v. Agrawal,* 775 F.Supp. 588, 590 (E.D.N.Y.), *aff'd,* 969 F.2d 1041 (2d Cir.1992). Because the primary purpose for the federal policy favoring arbitration is to promote the expeditious resolution of disputes, a court's review of an arbitrator's decision to not postpone a hearing is limited. *ARW,* 45 F.3d at 1463. If there is any reasonable basis for the arbitrator's decision not to postpone a hearing, the court should not intervene. *DVC–JPW Invs. v. Gershman* 5 F.3d 1172, 1174 (8th Cir.1993).

■■ In this case, the Tribunal was acting within the scope of its discretion in refusing to postpone the hearing. Defendants contend that a postponement was necessary for the following 14 reasons:

1. Arbitrator Wood reviewed the documents in breach of his agreement with the parties.

2. Arbitrator Wood reviewed the documents without giving Upper Deck an opportunity to assert its privileges.

3. Plaintiffs reneged on their agreement that the documents would be returned if the TRO was granted.

4. Lucal attempted to deceive Arbitrator Wood by preparing a misleading privilege log.

5. Arbitrator Wood ordered Upper Deck to review and present evidence supporting claims of privilege for 500 documents which were to be delivered on the Sunday before the Monday commencement of the arbitration, preventing Upper Deck from preparing for arbitration.

6. Arbitrator Wood failed to deliver the documents to Upper Deck on Saturday, preventing Upper Deck from a meaningful opportunity to assert its privileges over the documents.

7. Arbitrator Wood refused to compel Mantle to produce the Four M documents relating to mitigation of damages, forcing Upper Deck to subpoena them.

8. Plaintiffs, who refused to produce the Four M documents at Upper Deck's request, took responsibility for insuring compliance with the subpoena, promising to deliver the documents on Saturday before the Monday commencement of arbitration, but failed to do so. Instead, the documents were delivered on Monday morning, while arbitration was convening in Dallas.

9. The Tribunal permitted plaintiffs to substitute a new expert witness days before the arbitration, over Upper Deck's objection. The new expert was not confirmed until less than two business days prior to commencement of the final hearing, requiring Upper Deck to produce an expert report rebutting the report of the newly-designated expert within 48 hours.

10. The Tribunal issued a subpoena to be served on Upper Deck the Friday evening before arbitration, ordering Upper Deck to produce thousands of documents by Monday morning.

11. To the extent plaintiffs conspired with Lucal to place the documents before Arbitrator Wood either (a) before the issuance of the subpoena or (b) before the May 6, 1996 TRO hearing, it constituted an attempted deception and warranted a postponement of the arbitration.

12. Further showing Lucal's deception, at the TRO hearing, Lucal never told the California court or Upper Deck that he had already produced the documents.

13. Stay should have been granted in the interest of comity to permit the California court to hold a preliminary injunction hearing.

14. A postponement would have given Upper Deck time to prepare a more comprehensive argument for the disqualification of Arbitrator Wood.

Additionally, defendants argue that a postponement would have been reasonable because there had been no prior request, and plaintiffs' counsel and witnesses resided in Dallas.

Defendants' first four contentions concern alleged improprieties that occurred prior to the hearing date. Defendants have offered no basis for concluding that a postponement could have remedied these errors. They could not, therefore, serve as proper grounds for a continuance.

Arguments five and six pertain to potential prejudice to defendants from being denied an adequate opportunity to assert privileges. Additional time would only have been necessary if the documents were to be produced. Because the Tribunal decided not to produce the documents, defendants cannot demonstrate that it was unreasonable to deny the continuance.

Arguments seven and eight both charge that the Tribunal should have allowed Upper Deck additional time to review Four M [8] documents relevant to damages. The parties agreed that Pikl would send the documents to Upper Deck for Saturday delivery. Defendants acknowledged at the hearing that he sent the documents. *See* Tr. at 59. Although the documents were marked for Saturday delivery, Upper Deck states that it did not receive them until Monday morning, the date arbitration hearing was set to commence. After learning that Upper Deck would not be able to obtain the documents until the next day, Pikl agreed to make extra copies for review prior to the beginning of testimony that afternoon. Pikl informed the Tribunal that there were only four short documents at issue. Tr. at 32. Because the documents were brief, the Tribunal offered to accommodate Upper Deck by making True, who was to discuss plaintiffs' damages, available for cross-examination after Upper Deck's attorney's review of the documents. *Id.* This offer was refused on the grounds that Upper Deck preferred not to cross-examine out of order and had thought that the Four M documents were more voluminous. *See id.*

The Tribunal did not commit misconduct by denying a continuance based on Upper Deck's late receipt of the Four M documents. Upper Deck was offered a reasonable accom-

---

**8.** Four M refers to Four M Enterprises, which had two contracts with defendants regarding Mantle memorabilia.

modation. Although Upper Deck's counsel may have preferred another course, the Tribunal's decision to deny the continuance on this ground is amply supported.

Defendants next assert that a continuance should have been granted to allow time to prepare an expert report rebutting the report of plaintiffs' newly-designated expert witness, Mr. Flanagan ("Flanagan").[9] Less than a week before the arbitration hearing, plaintiffs informed the AAA that a key expert previously designated, Barry Halper ("Halper"), was ill and unable to attend the arbitration. Plaintiffs submitted a letter from Halper's treating physician stating that Halper had recently been hospitalized because of cardiac disease and that his present status made it inadvisable for him to travel or testify. Plaintiffs requested permission to substitute a new expert and to designate a previously undisclosed individual to testify.

Defendants objected to the substitution, arguing that it would cause substantial prejudice. Defendants had designated their expert, Lou Costanzo ("Costanzo"), to discuss the sports memorabilia market. Costanzo was familiar with Halper and was prepared to attack his testimony. He knew nothing, however, about Flanagan and was not prepared either to rebut his qualifications or his testimony. Arbitrator Wood conducted a hearing on the matter and ruled that plaintiffs would be permitted to substitute a new expert witness.

Defendants have offered no evidence suggesting that more time was needed to prepare for Flanagan, a conditional rebuttal witness. The Tribunal could reasonably have concluded that the time given was adequate in light of the expedited and less formal nature of arbitration.

Argument ten refers to a subpoena ordering Upper Deck to produce voluminous of documents by Monday morning. On Friday, May 10, 1996 Upper Deck was served with a subpoena mandating the production of the documents prior to the hearing. Defendants contend a continuance was needed because complying with the subpoena in time would have been unduly burdensome. The record reflects, however, that plaintiffs agreed at the hearing to withdraw the subpoena. *See* Tr. at 67. This rendered defendants' concerns moot.

Argument thirteen is that a stay should have been granted in the interests of comity. Defendants maintains that comity required the Tribunal to wait until the California court that issued the TRO could hold a hearing on the preliminary injunction before proceeding. Defendants have offered no authority for the proposition that arbitration must await the conclusion of court proceedings that do not present the issues to be resolved in arbitration. Additionally, in this case, any effect the preliminary injunction hearing might have had on the arbitration proceeding was entirely speculative. Comity is a discretionary doctrine. The Tribunal was under no obligation to defer to the California court.

Finally, in argument fourteen, defendants posit that a continuance was needed to prepare a more developed argument for the disqualification of Arbitrator Wood. Defendants have not identified any additional information that they could have presented had they been given more time. The Tribunal heard their allegations of bias, and the AAA reconfirmed Arbitrator Wood's appointment. A continuance for this purpose was not required, and certainly does not support vacatur.

Although there may have been reasonable grounds for the Tribunal to grant a continuance, there were also reasonable grounds to deny one. Pikl indicated to the Tribunal that plaintiffs had expended significant resources preparing for the hearing and had brought in out-of-state witnesses. *See* Tr. at 36. In light of the purpose of arbitration to provide a swift and efficient manner of resolving disputes, defendants have not demonstrated that the Tribunal committed misconduct by refusing to delay the hearing.

## VIII

Defendants argue that the Tribunal exceeded its powers by awarding damages to plaintiffs under contracts to which Mantle was not a party. Specifically, defendants

---

**9.** The court has not located Flanagan's first name in the record.

contend that the Tribunal awarded damages to plaintiffs under contracts that defendants had entered into with Four M and American Avenues Co. ("American"). Defendants also assert that the Tribunal improperly awarded damages under a contract with Mantle, referred to as the "Flipp–Tipps contract." Defendants maintain that these contracts are completely distinct from the Agreement, and thus are outside the scope of issues submitted to arbitration.

It is beyond dispute that the Tribunal has only the power to arbitrate disputes that have been submitted to it by the parties. *See, e.g., Gateway,* 64 F.3d at 998 n. 7. Plaintiffs contend, however, that the other contracts to which defendants refer were "carved out" of the Agreement through various sublicense contracts and then "merged" back into the Agreement by oral agreement of all parties involved, prior to the institution of the instant lawsuit. In essence, plaintiffs contend that all obligations that defendants owed to Four M and American under the sublicense agreements, and to Mantle under the Flipp–Tipps contract, were terminated so that defendants were obligated only to make the agreed upon payments to Mantle pursuant to the Agreement.

Plaintiffs' contentions with respect to the merging of the Four M, American, and Flipp–Tipps contracts with the Agreement were fully set forth in the hearing record. True testified that defendants' obligations to Four M and American under the sublicense agreements had been terminated by agreement of all of the parties, and that any guaranteed payment or royalty obligations of defendants were merged into the Agreement. Although defendants appear to dispute this testimony as a factual matter, there was plainly a basis in the record for the Tribunal to conclude that it was only resolving matters under the Agreement—matters that had clearly been submitted by the parties for arbitration.

As the court has already noted, it cannot vacate the Tribunal's Award on the basis of what it believes to be an error of law or mistake of fact. True's undisputed testimony provided a factual basis for the Tribunal to conclude that the Four M, American, and Flipp–Tipps contracts had been merged into the Agreement and were thus within the scope of issues submitted by the parties to arbitration. The Tribunal apparently credited this testimony. Whether the Tribunal was correct in doing so is not for this court to decide. The court may not vacate on the basis of a mistake in factfinding.

Accordingly, the Tribunal did not exceed its powers by addressing claims for payments and royalties that, at least at one time, were the subject of the Four M, American, and Flipp–Tipps contracts.

**IX**

Defendants challenge the award of interest, contending no prejudgment interest is available on exemplary damages, the award exceeds the federal rate, and the award is improperly computed on a per diem rather than annual basis.

Defendants' various objections to prejudgment interest must be denied. It was within the Tribunal's power to award interest on its award from the time the award was entered until the time of judgment confirming the award in this court. *See generally In re UCO Terminals, Inc. v. Apex Oil Co.,* 583 F.Supp. 1213, 1217 (S.D.N.Y.), *aff'd,* 751 F.2d 371 (2d Cir.1984) (table). Assuming that defendants' contentions with respect to prejudgment interest are correct, they are no more than arguments that the Tribunal misapplied the law, which does not subject an arbitral award to vacatur or modification.

It was not within the Tribunal's power, however, to specify the rate of postjudgment interest. The district court's judgment confirming an arbitration award is to have the same effect, in every respect, as is any other judgment · entered by the court, and post-judgment interest is thus governed by statutory rates. 9 U.S.C. § 13; *see also Parsons & Whittemore Alabama Mach. & Servs. Corp. v. Yeargin Constr. Co.,* 744 F.2d 1482, 1484 (11th Cir.1984) (per curiam) (holding that § 13 implicitly mandates "a district court judgment affirming an arbitration award is governed by statutory interest rates"). The court therefore reads the Tri-

bunal's award of interest to apply only to the period between entry of the award and entry of a judgment confirming the award in this court. The court will apply the current federal rate to post-judgment interest. *See* 28 U.S.C. § 1961(a).

## X

 Plaintiffs seek attorney's fees in connection with their response to defendants' motion to vacate arbitration award. The Award states that "[i]n the event an appeal is perfected, Mantle shall recover from Upper Deck, jointly and severally, Two Hundred Thousand Dollars and No Cents ($200,000.00) for additional attorneys' fees." Award at 1. Plaintiffs contend that they are entitled to attorney's fees because filing a motion to vacate is substantially similar to perfecting an appeal. This construction of the Award is contrary to its plain language. Plaintiffs may request attorney's fees under this provision in the event defendants perfect an appeal from this court's judgment confirming the Award.

## XI

 Defendants have filed a motion for leave to file additional evidence. They maintain that the additional evidence establishes that Pikl read Upper Deck's privileged documents even though they were not produced, that the settlement assessments were clearly privileged, and that the documents should have been returned to Upper Deck by Lucal. Defendants' motion is denied because the proffered evidence could have no effect on the court's decision on the pending motions.

Even if defendants could demonstrate that Lucal showed Pikl the documents, defendants' arguments for vacatur would be unsuccessful. Defendants would still be unable to show that Arbitrator Wood engaged in misconduct or misbehavior or that his actions caused prejudice; that there was a nexus between Pikl's or Lucal's behavior and the Award; that Arbitrator Wood was partial; or that the Tribunal did not have reasonable

grounds for refusing a postponement. Defendants have not offered evidence that Pikl obtained the documents because of a decision by Arbitrator Wood or the Tribunal. Nor have they offered evidence that any member of the Tribunal knew that Pikl had already seen the documents. Any allegations that he had done so were entirely speculative at the time and were refuted by Pikl's direct testimony. Defendants cannot establish a causal connection between Pikl's actions and the Tribunal's decision or the Award. Thus whether Pikl in fact saw the documents does not affect the outcome of the court's decision on these motions.

The other evidence that defendants offer is similarly unavailing. Defendants maintain that the evidence establishes that the documents were privileged and should have been returned by Lucal. Nothing in this court's analysis, however, rests on the merits of the California proceeding or the privileged nature of the documents.[10]

\* \* \*

Accordingly, plaintiffs' May 29, 1996 motion to confirm entry of award and for entry of judgment is granted except to the extent plaintiffs seek post-judgment interest at the rate calculated by the Tribunal, and except to the extent plaintiffs request that the court award them attorney's fees that the Tribunal awarded in the event of an appeal. Defendants' June 28, 1996 motion to vacate arbitration award is denied. A judgment is filed today.

**SO ORDERED.**

10. Defendants also maintain that had they known that Pikl had seen the documents, they would have requested his disqualification in addition to Arbitrator Wood's recusal. Defendants have not made the required showing, however, of a nexus between Pikl's review of the documents and the nature or amount of the Award.