PEOPLES SECURITY LIFE
INSURANCE COMPANY,
Plaintiff–Appellee,

v.

MONUMENTAL LIFE INSURANCE
COMPANY; B. Larry Jenkins; Ronald
J. Brittingham; Thomas R. Jenkins;
Willard E. Hines, Defendants–Appellants.

No. 92–1614.

United States Court of Appeals,
Fourth Circuit.

Argued Feb. 2, 1993.

Decided April 20, 1993.

Sheila Mosmiller Vidmar, Piper & Marbury, Baltimore, MD, argued (Donald E. Sharpe, Elizabeth C. Kelley, Joanne B. Marshall, on brief), for defendants-appellants.

Alan Mitchell Wiseman, Howrey & Simon, Washington, DC, argued (Gaspare J. Bono, Charles H. Samel, Lisa J. Saks, Susan M. Donovan, Howrey & Simon, Washington, DC, Lillard H. Mount, James H. Hughes, Maxwell & Hutson, Durham, NC, on brief), for plaintiff-appellee.

Before RUSSELL and WIDENER, Circuit Judges, and CHAPMAN, Senior Circuit Judge.

## OPINION

CHAPMAN, Senior Circuit Judge:

This is an appeal from an order and judgment of the district court, which refused to vacate the arbitration award that found Monumental Life Insurance Co. ("Monumental") liable to Peoples Security Life Insurance Co. ("Peoples Security") for violation of an agreement dated September 13, 1984. Appellant Monumental claims partiality and bias of one of the arbitrators, that the arbitration tribunal disregarded the applicable law in finding it liable for the tort of unfair competition, and that the tribunal exceeded its authority in awarding treble damages for the North Carolina portion of the damages and in awarding prejudgment interest. We find no merit to these exceptions, and we affirm.

On August 1, 1986, Peoples Security filed an action in the United States District Court for the Middle District of North Carolina alleging violation of a September 13, 1984 agreement ("the Agreement") between its parent, Capital Holding Corp. ("Capital") and appellant Monumental.[1] Peoples Security is based in Durham, North Carolina and Monumental is based in Baltimore, Maryland.

The essence of Peoples Security's claim was that Monumental recruited and hired-away Peoples Security's agents in violation of the Agreement. Peoples Security claimed that its former agents, enticed into working for Monumental, visited Peoples Security's policyholders and, by use of underhanded sales tactics, replaced Peoples Security's policies with policies issued by Monumental.

The case was transferred to the United States District Court for the District of Maryland, and shortly thereafter, Monumental filed a Motion to Compel Arbitration and for Stay Pending Arbitration. In *Peoples Security Life Insurance Co. v. Monumental Life Insurance Co.*, 867 F.2d 809 (4th Cir.1989), we held that the parties were "bound by the Settlement Agreement to arbitrate their differences" and remanded the case to the district court "for the purpose of entering an appropriate order to arbitrate." *Id.* at 814.

The case was then submitted to a three-member arbitration panel approved by the

---

1. Peoples Security is the product of a merger between two Capital subsidiaries, Peoples Life Insurance Company of Washington, D.C. and Home Security Life Insurance Company of Durham, North Carolina.

parties ("the Tribunal") which awarded Peoples Security $9,424,651.00. Monumental filed a motion in the district court to vacate the award claiming that one of the arbitrators lacked impartiality, and that the Tribunal exceeded its power by awarding damages beyond the scope of the Agreement.

The district court denied this motion, affirmed the arbitration award and entered judgment for Peoples Security. The judgment was amended to reflect accrued interest, and the total of the amended judgment being appealed is $9,700,851.19.

### Facts

Monumental and Peoples Security are competitors in the sale of insurance products through the "home service" method of distribution. In both companies, employee agents regularly visit a list of customers (a "debit") to service policies, add or subtract coverage, and collect premiums.

This appeal arises from the language of the Agreement dated September 13, 1984, which prohibited Monumental and Peoples Security from hiring or soliciting agents away from one another for a period of three years.

In its Complaint, Peoples Security alleged that Monumental had violated the terms of the Agreement (1) by hiring and soliciting its managers and agents, (2) by unlawfully appropriating trade secrets and confidential information concerning Peoples Security policyholders in violation of Peoples Security's agents' employment contracts,[2] (3) by encouraging agents to roll over the policies of their former debits in violation of their non-complete clauses, and (4) that these acts constituted deceptive trade practices in violation of the North Carolina Unfair Trade Practices Act ("NCUTA"). N.C.Gen.Stat. § 75–1.1(a) (1988).[3]

Pursuant to the Agreement and the mandate of this court, upon remand, all of Peoples Security's claims were submitted to the Tribunal, a distinguished three-member arbitration panel. The first member selected was Frederick B. Lacey, a federal judge on the United States District Court for the District of New Jersey from 1971–1986. From 1983 to 1986 he served on the Judicial Ethics Committee of the Judicial Conference of the United States. After retiring from the bench in February 1986 he became a member of the law firm LeBoeuf, Lamb, Leiby & McRae ("LeBoeuf") in its Newark, New Jersey and New York offices. The LeBoeuf firm is comprised of more than 450 attorneys who operate out of 17 offices worldwide. Judge Lacey was the only member of the panel to be selected and approved directly by the parties. His was the only name selected by both sides from a list of more than 70 names submitted by the American Arbitration Association ("AAA"). The remaining members of the Tribunal were selected by the AAA because the parties were unable to agree on any other available arbitrators.

The Tribunal's chairman was Lloyd N. Cutler, Esq., a founding partner of the law firm of Wilmer, Cutler & Pickering, and Counsel to President Jimmy Carter. The

---

**2.** A typical non-compete clause reads as follows:

For a period of one year immediately following the termination of employment under this Agreement, the Agent agrees:

1. Not to replace or cause to be replaced, insurance of any kind in the Agent's account with respect to any person, company, or organization to whom a policy was issued by the Company or by Capital Enterprise Insurance Group; and

....

3. Not to work upon or in any way interfere with any part of any account or territory upon which the Agent previously worked in the same State for the Company.

**3.** N.C.Gen.Stat. § 75–1.1(a) states, "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful." "Unfair methods of competition" is not defined in the statute but has been held to include tortious interference with contractual relations and inducement of a salesman to violate a non-compete clause. *United Labs., Inc. v. Kuykendall*, 322 N.C. 643, 370 S.E.2d 375, 388–89 (1988).

N.C.Gen.Stat. § 75–16 *requires* the imposition of treble damages against parties who are found liable under the NCUTA. *Atlantic Purchasers, Inc. v. Aircraft Sales, Inc.*, 705 F.2d 712, 715 (4th Cir.), *cert. denied*, 464 U.S. 848, 104 S.Ct. 155, 78 L.Ed.2d 143 (1983).

other arbitrator was Penrose Wolf, Esq., a partner in the Hartford, Connecticut law firm of Wiselman, Horowitz & Thayer. Mr. Wolf, served as corporate counsel to the Hartford Insurance Group from 1980 to 1984, and is a recognized expert in insurance law.

Following pre-trial hearings, the Tribunal bifurcated the proceedings into liability and damage phases. The liability hearings commenced February 20, 1990 and concluded April 9, 1990. On this issue, the Tribunal heard the live testimony of 34 witnesses, over a period of 22 days, resulting in a transcript of more than 4,600 pages. Both parties then filed extensive post-trial briefs, and on August 29, 1990, the Tribunal issued a unanimous 110 page opinion, which found Monumental liable for violating the Agreement.

Specifically, the Tribunal found Monumental liable for the tort of unfair competition, improper use of Peoples Security's "debit books" (customer lists), inducement of Peoples Security's agents to violate their non-compete clauses, and improper replacement of Peoples Security's business in violation of the "spirit" clause of the agreement.

The Tribunal awarded treble damages for violation of the NCUTA because it found that Monumental had violated the first sentence of paragraph 6 of the Agreement, the so-called "spirit clause." Paragraph 6 reads as follows:

> Full compliance with the spirit and the terms of this agreement is intended and expected by both sides. Any question, charge, complaint or grievance believed to constitute a breach or violation shall be immediately communicated between counsel and the party alleged to be in breach of the agreement and shall have five days to respond, correct or justify its action.
>
> If the aggrieved party is not then satisfied, the matter shall be submitted to the American Arbitration Association for final and mutually binding resolution by it including the award of damages or other relief. If the Arbitrator finds that there has been a hiring in violation of this Agreement; he shall award damages commensurate with the loss he finds has been, or is expected to be, sustained up to but not exceeding $50,000 for each such hire.

The Tribunal found that the spirit clause imposed wide responsibilities and duties on the parties that were related to, but not expressly contained within the Agreement. Specifically, the tribunal interpreted the spirit clause to be "an implied contractual commitment not to engage in the tort of unfair competition regarding the subject matter of the Agreement."

Hearings on damages were conducted between May 13 and May 21, 1991. Both parties then submitted post-trial briefs and on September 10, 1991 the Tribunal, in a very detailed 78 page unanimous decision, awarded damages to Peoples Security of more than $9.4 million. This amount included damages for violations of the Agreement, pre-award interest, and treble damages for unfair competition in violation of the NCUTA.

In its opinion on damages, the Tribunal held that the $50,000 damage cap only applied when there had been a hiring that violated the agreement. The Tribunal classified Monumental's violations into four categories: (1) violations of the recruiting provisions that resulted in hirings, (2) violations of the recruiting provisions that did not result in hirings, (3) unfair competition in violation of the "spirit" clause, and (4) misappropriation of proprietary information in violation of the agreement.

The Tribunal held that the $50,000 damage cap applied to recruiting violations that resulted in hirings and violations of the "spirit" clause that resulted in hirings. It found that the $50,000 cap did *not* apply to damages for misappropriation of Peoples Security's confidential and proprietary information or to the Tribunal's ability to grant pre-award interest.

### Issues

Monumental claims the arbitration award should be set aside for three reasons. First, that one of the arbitrators, Judge Lacey, possessed "evident partiality" in vi-

olation of the Federal Arbitration Act. 9 U.S.C. § 10(a)(4) (Supp.1992). Second, that the arbitrators exceeded their authority in violation of 9 U.S.C. § 10(a)(2) by finding Monumental liable for the tort of unfair competition. Third, that the tribunal exceeded its authority by awarding Peoples Security treble damages for Monumental's breach of the NCUTA and 7% pre-award interest.

## Standard of Review

This Court has jurisdiction pursuant to the Federal Arbitration Act. 9 U.S.C. §§ 1–14 (1988 and Supp.1992).[4]

■■■ The district court's decision confirming the arbitration award is reviewed *de novo. Employers Ins. v. National Union Fire Ins. Co.*, 933 F.2d 1481, 1485 (9th Cir.1991). Great deference is given to arbitration awards. *Upshur Coals Corp. v. United Mine Workers, Dist. 31*, 933 F.2d 225, 226, 228 (4th Cir.1991). This Court has stated, "[a]lthough we may disagree with an arbitrator's interpretation of a contract, we must uphold it as long as it 'draws its essence from the agreement.'" *Id.* at 229 (citation omitted).

■■■ The district court's finding that Judge Lacey was impartial, a factual finding underlying its decision to confirm the award, is subject to the "clearly erroneous" standard of review. *Employers Ins.*, 933 F.2d at 1485. *Accord, Culbertson v. Jno.*

*McCall Coal Co.*, 495 F.2d 1403, 1405 (4th Cir.), *cert. denied*, 419 U.S. 1033, 95 S.Ct. 516, 42 L.Ed.2d 308 (1974).

## Monumental's Claim of Evident Partiality

Monumental spends most of its energy on the claim that the arbitration award must be vacated because Judge Lacey possessed evident partiality in violation of 9 U.S.C. § 10(a)(2). It argues that Judge Lacey should not have served because six months after the arbitration proceedings began, and after the conclusion of the testimony on the issue of liability, attorney James Nolan joined the LeBoeuf law firm. Nolan, who joined LeBoeuf's Washington D.C. office in May, 1990, signed the initial complaint on behalf of Peoples Security in this case while he was a partner at the law firm of Adams, Duque & Hazeltine ("Adams").[5]

Judge Lacey worked exclusively in the LeBoeuf firm's Newark, New Jersey and New York offices. Mr. Nolan, worked exclusively in LeBoeuf's Washington, D.C. office.

Uncontroverted evidence was presented and the district court found that Judge Lacey was unaware of his professional relationship with Mr. Nolan during the arbitration proceedings. Specifically, Judge Lacey stated that, until Monumental filed its Motion to Vacate Award in October, 1991, he was unaware of either Mr. Nolan's

---

**4.** Under the Act, an award may only be vacated under five circumstances:

(1) Where the award was procured by corruption, fraud, or undue means.

(2) Where there was evident partiality or corruption in the arbitrators, or either of them.

(3) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced.

(4) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

(5) Where an award is vacated and the time within which the agreement required the award to be made has not expired the court

may, in its discretion, direct a rehearing by the arbitrators.

9 U.S.C. § 10(a)(1–5).

**5.** Mr. Nolan represented Peoples Security in 1986 and early 1987 while a partner in the Washington, D.C. office of the Adams firm. The Adams firm withdrew as counsel for Peoples Security because it had represented Monumental in unrelated matters in its Los Angeles office. When the Adams firm closed its Washington office, Mr. Nolan joined the Washington office of the law firm of Jenner & Block. Howry & Simon then replaced the Adams firm as counsel for Peoples Security.

Judge Lacey joined the LeBoeuf firm in 1986. He became involved in this suit as an arbitrator in December 1989. The hearings on the issue of liability were concluded on April 9, 1990. In May 1990 Mr. Nolan joined the LeBoeuf firm as a partner.

presence at LeBoeuf or of his representation of Peoples Security in 1986 and early 1987. On November 5, 1991, Mr. Nolan signed an affidavit stating that he had never met or spoken to Judge Lacey. Furthermore, Mr. Nolan stated that he was unaware of Judge Lacey's participation as an arbitrator in this dispute until he obtained a copy of the Final Award of Damages entered on September 10, 1991. Both Lacey and Nolan offered to make themselves available for cross examination by Monumental's attorneys, but Monumental did not seek discovery.

For this court to overturn the Tribunal's award, Monumental must demonstrate that there was "evident partiality" on Judge Lacey's part. 9 U.S.C. § 10(a)(4). Specifically, Monumental "must show that 'a reasonable person would have to conclude that an arbitrator was partial' to the other party to the arbitration." *Apperson v. Fleet Carrier Corp.*, 879 F.2d 1344, 1358 (6th Cir.), *cert. denied*, 493 U.S. 809, 110 S.Ct. 51, 107 L.Ed.2d 20 (1989) (citation omitted).

 It is well established that a mere appearance of bias is insufficient to demonstrate evident partiality. *Health Servs. Management Corp. v. Hughes*, 975 F.2d 1253, 1264 (7th Cir.1992); *Apperson*, 879 F.2d at 1358; *Morelite Constr. Corp. v. New York City Dist. Council Carpenters Benefit Funds*, 748 F.2d 79, 83 (2nd Cir. 1984). Arbitrators are not held to the ethical standards required of Article III judges articulated in 28 U.S.C. § 455. As Justice White wrote in his concurring opinion in *Commonwealth Coatings Corp. v. Continental Casualty Co.*, 393 U.S. 145, 89 S.Ct. 337, 21 L.Ed.2d 301 (1968):

> The Court does not decide today that arbitrators are to be held to the standards of judicial decorum of Article III judges, or indeed of any judges. It is often because they are men of affairs, not apart from but of the marketplace, that they are effective in their adjudicatory function. This does not mean the judiciary must overlook outright chicanery in giving effect to their awards; that would be an abdication of our responsibility. But it does mean that arbitrators

are not automatically disqualified by a business relationship with the parties before them if both parties are informed of the relationship in advance, or if they are unaware of the facts but the relationship is trivial. I see no reason automatically to disqualify the best informed and most capable potential arbitrators.

*Id.* at 150, 89 S.Ct. at 340.

 The party asserting evident partiality has the burden of proof. *Health Servs. Management Corp.*, 975 F.2d at 1258 n. 3. The alleged partiality must be "direct, definite, and capable of demonstration rather than remote, uncertain or speculative." *Id.* at 1264 (quoting *Florasynth Inc. v. Pickholz*, 750 F.2d 171, 173–74 (2nd Cir.1984)). Therefore, the burden on a claimant for vacation of an arbitration award due to "evident partiality" is heavy, and the claimant must establish specific facts that indicate improper motives on the part of an arbitrator.

 Mr. Nolan's representation of Peoples Security in 1986–87 is not sufficient ground for finding that Judge Lacey possessed evident partiality in violation of 9 U.S.C. § 10(a)(4). Judge Lacey had not been involved in the litigation between the two parties. At the time Judge Lacey was selected as an arbitrator, Mr. Nolan had ceased to represent Peoples Security, and he had not yet become a lawyer in the LeBoeuf firm. Monumental has produced no evidence of actual bias by Judge Lacey that would bring his impartiality into question.

This dispute is especially suited for arbitration. It involves complex and technical issues that are best handled by a blue-ribbon panel of experts. There was no contact between Mr. Nolan and Judge Lacey. A finding of evident partiality under the facts of this case would make the job of finding qualified arbitrators exceedingly burdensome and would disqualify most attorneys from large firms from acting as arbitrators.

Monumental also claims that Judge Lacey was biased because of Mr. Nolan's unrelated representation of another insurance company, Colonial Insurance Compa-

ny. Specifically, after joining LeBoeuf, and while the damages phase of the arbitration proceedings in this case was taking place, Mr. Nolan handled a factually similar case for Colonial against another insurance company involving claims of unfair competition and the pirating of agents. Monumental alleges that Judge Lacey ruled in favor of Peoples Security in order to set a precedent for Mr. Nolan's case. This claim is meritless because arbitration awards have no precedential value. *Smith v. Kerrville Bus. Co.*, 709 F.2d 914, 918 n. 2 (5th Cir.1983) (Courts are not bound by arbitral rulings).[6] *See also, Little Six Corp. v. United Mine Workers, Local Union No. 8332*, 701 F.2d 26, 29 (4th Cir.1983).

Monumental argues that the high award in favor of Peoples Security was designed to scare the opposing party in Mr. Nolan's case into settling, and settlement by the Colonial case would also benefit Judge Lacey. There is no logic to this argument because Mr. Nolan was working on an hourly, not a contingency fee, basis and he would be paid the same amount whatever the outcome of the suit. The finding of the district court as to the impartiality of the arbitrators is not clearly erroneous.

### Claim That The Tribunal Exceeded Its Authority

█ Monumental argues that the Tribunal exceeded its authority in finding a breach of the NCUTA by Monument and in awarding treble damages. If the Tribunal did exceed the scope of its power, this abuse would constitute a violation of 9 U.S.C. § 10(a)(2).

We have already held that the arbitration clause was broad enough to encompass all claims contained in the Complaint. *Peoples Security*, 867 F.2d at 814. Peoples Security's Complaint contained a claim for unfair competition. Therefore, the Tribunal's award of damages on this claim did not exceed the scope of the arbitration or the powers of the arbitrators.

An overriding principle of the Federal Arbitration Act is that:

"[A]ny doubts concerning the scope of arbitrable issues," as well as any doubts concerning the scope of the arbitrators' remedial authority, are to be resolved in favor of the arbitrators' authority as a matter of federal law and policy.

*Willoughby Roofing & Supply Co. v. Kajima Int'l, Inc.*, 598 F.Supp. 353, 358 (N.D.Ala.1984), *aff'd per curiam*, 776 F.2d 269 (11th Cir.1985).

There is nothing in the language of the NCUTA which limits its enforcement to adjudication in the courts. The Tribunal's award of treble damages for violations of the NCUTA occurring in North Carolina is based upon its finding that:

Monumental engaged in a systematic pattern of behavior sufficiently extensive to render it subject to liability under the Act ... Because the Tribunal has found that Monumental breached the Agreement by engaging in the tort of unfair competition in North Carolina, it must find that Monumental violated the Unfair Trade Practices Act, and it must award claimants treble damages. The damage cap contained in Paragraph 6 of the Agreement does not limit the Tribunal's ability to award treble damages; as the Tribunal has previously held, the cap places no limit on the non-compensatory damages the Tribunal can award. The Tribunal does not, however, award treble damages on losses sustained by claimants outside the borders of North Carolina (citations omitted).

The district court found that the Agreement gave the arbitrators the power to accord such relief as they found appropriate, provided that any award for unauthorized hires could not exceed the damage cap of $50,000 per hire. Monumental argues that the term "damages and other relief" limited the arbitrators to an award of contract-based damages. We find this interpretation of the Agreement to be too narrow, and it is inconsistent with our prior decision that the parties were bound by the terms of the Agreement to submit all of

---

**6.** Although *Smith* involves arbitration under § 301 of the Labor Management Relations Act, we believe the same principal applies to arbitrations under the Federal Arbitration Act.

their claims to arbitration. *Peoples Security,* 867 F.2d at 814.

We affirm the award of treble damages based upon the Tribunal's finding that Monumental's systematic violations of the letter and spirit of the Agreement was a violation of the NCUTA.

### Pre–Award Interest

Appellant contends that the arbitrators exceeded their authority, in violation of 9 U.S.C. § 10(a)(2), in awarding Peoples Security 7% pre-award interest, because the amount of the underlying liability could not be ascertained with certainty.

▮▮▮▮ An arbitration award under the Federal Arbitration Act may include pre-award interest on the compensatory portions of an award when the amount of the underlying liability can be ascertained with some certainty. The arbitrators, in granting pre-award interest stated:

> The Tribunal finds it appropriate and equitable to grant pre-award interest to claimants. Although the quantum of damages cannot be ascertained with precision, the quantum can be calculated in accordance with standard actuarial techniques with sufficient confidence. Furthermore, a grant of pre-award interest is necessary to make claimants whole for the damages they have sustained.

We would be concerned had the Tribunal added 7% pre-award interest to the damages trebled under the NCUTA but this did not occur. Damages are trebled under the NCUTA, not to compensate the wronged party, but to deter unwanted trade practices. Adding 7% pre-award interest to these trebled damages, therefore, would not be necessary to make Peoples Security whole. Upon careful inspection of the award, however, it is clear that the Tribunal only added 7% pre-award interest to the compensatory portions of the award.

It is also Monumental's contention that the actuarial model developed by the Arbitrators to determine the actual value of the policies acquired by Monumental in violation of the Agreement was not precise enough to permit the Tribunal to grant pre-award interest. We disagree. Actuarial tables are the life's blood of the life insurance industry. It is disingenuous for Monumental to question the accuracy of the very methodology employed by the industry in issuing its policies simply because actuarial tables were used to determine pre-award interest. We affirm the Tribunal's grant of 7% pre-award interest.

For the reasons stated above, we affirm the district court's confirmation of the arbitration award.

AFFIRMED.