**FLEXSYS AMERICA, L.P., Plaintiff,**

v.

**LOCAL UNION NO. 12610, Affiliated with the United Steelworkers of America, AFL—CIO—CLC, Defendant.**

**No. Civ.A. 2:99–0780.**

United States District Court,
S.D. West Virginia,
Charleston Division.

Feb. 16, 2000.

Anna M. Dailey, Heenan, Althen & Roles, Charleston, WV, Teri Firmiss Thompson, Matkov, Salzman, Madoff &

---

Gunn, Chicago, IL, for plaintiff and counterdefendant, Flexsys America, L.P.

James M. Haviland, Crandall, Pyles, Haviland & Turner, Charleston, WV, Arlus J. Stephens, Assistant General Counsel United Steelworkers of America, AFL—CIO, for defendant and counter-claimants.

## MEMORANDUM DECISION AND ORDER

GOODWIN, District Judge.

Pending before the Court are cross motions for summary judgment. At issue is the validity of a labor arbitration decision. For the reasons stated below, summary judgment is **GRANTED** for the Plaintiff and **DENIED** for the Defendant.

### I.

To obtain summary judgment, the moving party must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Fed.R.Civ.P.* 56(c). In considering a motion for summary judgment, the Court will not "weigh the evidence and determine the truth of the matter." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Instead, the Court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

Although the Court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor." *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505. Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505.

Here, the parties agree that there are no material issues of fact and that the sole issue of law for the Court to determine is the validity of a labor arbitration decision.

### II.

Flexsys owns and operates a plant in Nitro, West Virginia, that produces chemicals for use in the rubber industry. Am. Cmplt. ¶¶ 4, 5, 7; Ans. ¶ 4. Flexsys is a limited partnership formed as a result of a joint venture between Monsanto Company and Akzo Nobel in 1995. *Id.* ¶ 7. Prior to the joint venture, the Nitro plant had been operated solely by Monsanto, one of the joint venture partners. Arb.Hrg.Tr. at 23–25.

As part of the transition, all former Monsanto employees were discharged, although after reevaluation by Flexsys, most of the former Monsanto employees were rehired in their previous capacity. Arb. Hrg.Tr. at 105, 129–30. Pursuant to the new joint venture, Flexsys and the United Steelworkers of America, AFL—CIO ("Union") entered into a collective bargaining agreement ("CBA") to govern the terms and conditions of the labor and workplace at the Nitro plant. Am.Cmplt. at Ex. A. The term of the CBA was from November 3, 1996 through November 2, 2002. *Id.* Any grievance filed by the Union or any dispute between the Union and Flexsys is determined from the terms of the CBA. During arbitration, an arbitrator is bound to apply the terms of the CBA, and his role in the arbitration is limited by the terms of the CBA. *See, e.g., Mountaineer Gas Co. v. Oil, Chemical & Atomic Workers Int'l Union*, 76 F.3d 606, 608 (4th Cir.1996).

On August 26, 1998, a dispute ensued between a Union member, James Chapman (Chapman), and a Flexsys Supervisor

(Supervisor). Prior to sending Chapman home, the Supervisor informed Chapman that the incident was being investigated and that Chapman was subject to discharge. Arb.Hrg.Tr. at 50–51, 95. The facts and circumstances of the argument were in dispute, with each party giving differing accounts of the incident. The only witness to the argument was unable to fully corroborate either side. After a two-day investigation during which at least two meetings were held, Flexsys suspended Chapman for thirty days without pay. The Union, on behalf of Chapman, filed a grievance protesting the suspension, alleging that Flexsys's suspension of Chapman violated the CBA. The parties were unable to resolve the grievance at the lower stages of the grievance procedure, and the matter was ultimately submitted to binding arbitration in accordance with the CBA.

The arbitration was contentious. During the arbitration, the Arbitrator, Merle Hart, asked few questions. At the end of the arbitration, the attorneys agreed to leave the arbitration open for the submission of a final brief to the Arbitrator.

Shortly before submission of Flexsys's brief, counsel for Flexsys, Jacqueline Damm, received a call from the Arbitrator. Pl.App., Ex. 6, Damm Aff., ¶ 6. Finding the phone call odd, Damm did not return his call. *Id.* Later that same day, the Arbitrator called a second time. *Id.* Damm answered the phone herself, and found herself party to an *ex parte* conversation. *Id.* According to Damm, the Arbitrator stated that he had already come to a decision in the case. *Id.,* ¶ 7. The Arbitrator stated that he was initially going to issue a decision without giving reasons, but thought that to do so would be "cowardly." *Id.* He then wanted to know if Damm wished to reopen arbitration to investigate the Supervisor's "background." The Arbitrator stated that if Flexsys declined to reopen the hearing for the purposes of investigating the Supervisor, he was leaning heavily toward granting the grievance without explanation. *Id.,* ¶ 12.

The "background" the Arbitrator referred to was a reference to the Arbitrator's perception that the Supervisor was gay. In the course of their conversation, the Arbitrator stated to Damm that he had handled "hundreds of homosexual cases" through his experience in a governmental intelligence agency during World War II and that his primary job had been to determine whether or not soldiers were homosexual. *Id.,* ¶ 8. The Arbitrator also stated that the Supervisor appeared "flighty" during the hearing. *Id.,* ¶ 9. The Arbitrator stated that if Chapman thought that his supervisor was "a queer," that he would want to grant Chapman's grievance on that basis alone. *Id.,* ¶ 10. The Arbitrator also suggested that Flexsys might want to terminate the Supervisor on the basis of his conclusion that the Supervisor was a homosexual. *Id.,* ¶ 11. Damm was shocked, and declined the Arbitrator's invitation to reopen the arbitration to investigate the Supervisor further.

After this conversation, Damm wrote opposing counsel, Dallas Elswick, detailing the conversation she had with the Arbitrator. Am.Cmplt. Ex. D. She informed Elswick that she was moving to have the Arbitrator removed from the case because the Arbitrator had shown a clear bias, and requested that the Union do the same. *Id.* Elswick refused to have the Arbitrator removed. Damm also wrote the Arbitrator, requesting that he recuse himself. *Id.,* Ex. E. The Arbitrator refused. *Id.* at Ex. F. Over Damm's objection, the Arbitrator issued an eight-page decision on June 12, 1999 in favor of the Union, and granted reinstatement and back pay to Chapman. On September 17, 1999, Flexsys filed this action requesting the arbitration award be vacated on the following grounds: (1) the Arbitrator failed to draw essence from the CBA and the arbitration award is a result of the Arbitrator applying his "own brand of industrial justice;" and (2) the Arbitrator demonstrated a clear bias.

### III.

Federal courts have the authority to review the decision of labor arbitrators pursuant to § 301 of the Labor Management Relations Act, 29 U.S.C. § 185. This authority, however, is extremely limited; it has been referred to as "among the narrowest known to law." *Union Pacific R. Co. v. Sheehan,* 439 U.S. 89, 91, 99 S.Ct. 399, 58 L.Ed.2d 354 (1978). This review is so limited, that even if there is a claim of factual or legal error, a court must defer to the arbitrator, as long as the arbitrator is even "arguably construing or applying the contract." *United Paperworkers Int'l Union v. Misco,* 484 U.S. 29, 38, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987); *Champion Int'l Corp. v. United Paperworkers Int'l Union,* 168 F.3d 725, 728 (4th Cir.1999).

### IV.

#### A.

▮ Generally, an arbitrator is under no obligation to provide the reasoning for his decision. *United Steelworkers v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 598, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). A court reviewing the arbitration award, however, must satisfy itself that the award is grounded in the CBA rather than in the arbitrator's "own brand of industrial justice." *Id.* at 597, 80 S.Ct. 1358. In order to determine whether or not the award "draws essence" from the CBA, a court examines:

> (1) the arbitrator's role as defined by the CBA; (2) whether the award ignored the plain language of the CBA; and (3) whether the arbitrator's discretion in formulating the award comported with the essence of the CBA's proscribed limits.

*Mountaineer Gas,* 76 F.3d 606 at 608. If the arbitration award either fails to draw its essence from the CBA, merely reflects the arbitrator's personal notions of right and wrong, or violates clearly established public policy, a court must vacate the award. *See id.*

The Court recognizes that the Plaintiff's argument that the Arbitrator's decision does not draw from the essence of the CBA has merit. Nevertheless, the Court finds it unnecessary to address this issue. The Court finds that it suffices to order vacation on the grounds of arbitrator bias.

#### B.

Although the Federal Arbitration Act (FAA) "does not apply to disputes stemming from collective bargaining agreements," *Domino Sugar Corp. v. Sugar Workers Local Union 392,* 10 F.3d 1064, 1067 (4th Cir.1993), the Fourth Circuit has found it appropriate to apply the evident partiality standard for vacation on the grounds of arbitrator bias as developed by FAA case law. *Consolidation Coal Co. v. Local 1643, UMWA.* 48 F.3d 125, 128–29 (4th Cir.1995).

Under Section 10 of the FAA, a court may vacate an arbitration award "[w]here there was evident partiality or corruption in the [arbitrator]." 9 U.S.C. § 10(a)(2). In order to demonstrate evident partiality under the FAA, the party seeking vacation must prove "that a reasonable person would have to conclude that an arbitrator was partial to the other party to the arbitration." *Consolidation Coal,* 48 F.3d at 129 (citing *Peoples Sec. Life Ins. Co. v. Monumental Life Ins. Co.,* 991 F.2d 141, 146 (4th Cir.1993) (internal quotations omitted)). "This reasonable person standard requires a showing of something more than the 'appearance of bias,' but not the 'insurmountable' standard of 'proof of actual bias.'" *Id.* (citing *Morelite Constr. Corp. v. New York City Dist. Council Carpenters Benefit Funds,* 748 F.2d 79 (2d Cir.1984)). The party claiming bias must also "establish specific facts that indicate improper motives on the part of the arbitrator." *Peoples,* 991 F.2d at 146.

The Court recognizes that there is a strong public policy favoring arbitration, especially when both parties have bargained for a non-judicial, informal forum. This does not, however, permit a corrupt substitute for a party's day in court. Here, the Arbitrator's conduct goes be-

yond bias into the realm of clear prejudice. A thorough review of the record reveals that the Arbitrator advised counsel for Flexsys that he was deciding for the Union because he had determined that the Supervisor was gay, but intimated that he might change his mind if Flexsys reopened the proceedings to investigate their purportedly gay employee. Among other things, the Arbitrator stated that he "[thought] that homosexuality is '[the Supervisor's] problem,'" Damm Aff., ¶ 9, and that "if Chapman thought [his Supervisor] was 'a queer' his insubordinate conduct could be explained." *Id.,* ¶ 13. The Arbitrator also "stated that he was interested in reopening the hearing, and that he would want to know [the Supervisor's] background and how Flexsys came to hire him." *Id.,* ¶ 11. Finally, the Arbitrator "went on to suggest that in light of his conclusion about [the Supervisor] (that he is a homosexual), Flexsys may want to terminate [him]." *Id.*

■ There was never any evidence presented by either party that the Supervisor was gay. The only individual who raised homosexuality as an issue was the Arbitrator, and that was after the arbitration hearing during an inappropriate, arbitrator-solicited, *ex parte* conversation. Accordingly, the Court finds that a reasonable person would conclude that the Arbitrator was biased, and that arbitrator bias is also an appropriate ground for vacation of the arbitration award.

## IV.

The Court **GRANTS** the Plaintiff's motion for summary judgment and **DENIES** the Defendant's motion for summary judgment. The arbitration award entered on June 14, 1999 by Merle W. Hart is **VACATED.** The Court **ORDERS** that the Court orders that judgment be entered in favor of the plaintiff and that this case be dismissed and stricken from the docket of this Court

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.