**UNPUBLISHED**

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

DOCTOR'S EXCHANGE OF SOUTH
CAROLINA, PC; DIANE JURAS, Doctor,
*Plaintiffs-Appellees,*

v.                                                       No. 01-1351

AMERICA'S BEST CONTACTS AND
EYEGLASSES, INCORPORATED,
*Defendant-Appellant.*

Appeal from the United States District Court
for the District of South Carolina, at Charleston.
David C. Norton, District Judge.
(CA-99-3577-2-23, CA-99-4241-2-18)

Argued: December 6, 2001

Decided: January 14, 2002

Before LUTTIG, KING, and GREGORY, Circuit Judges.

Affirmed by unpublished per curiam opinion.

**COUNSEL**

**ARGUED:** Kenneth Martin Willner, PAUL, HASTINGS, JANOF-
SKY & WALKER, L.L.P., Washington, D.C., for Appellant. Justin
O'Toole Lucey, JUSTIN O'TOOLE LUCEY, P.A., Mount Pleasant,
South Carolina, for Appellees. **ON BRIEF:** Barbara B. Brown, Diana
Embrey, PAUL, HASTINGS, JANOFSKY & WALKER, L.L.P.,
Washington, D.C.; Michael A. Scardato, MCNAIR LAW FIRM,

P.A., Charleston, South Carolina, for Appellant. Warwick R. Furr, II, HOLLAND & KNIGHT, L.L.P., McLean, Virginia, for Appellee Doctor's Exchange.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

## OPINION

PER CURIAM:

Appellant America's Best Contacts & Eyeglasses, Inc. ("AmBest") appeals the February 2001 Order of the district court of South Carolina granting Appellee Dr. Diane Juras's motion to confirm an arbitration award. AmBest maintains that the court erred in its confirmation order, in that it was entered without prejudice to a Title VII claim for sexual harassment. As explained below, the district court did not err in its ruling, and we affirm.

I.

Dr. Diane Juras is an optometrist licensed in the State of South Carolina, while AmBest is a national retailer of eyeglasses and contact lenses operating in twenty states. To aid its sale of eyewear, AmBest employs a licensed optometrist at each of its business locations to conduct eye examinations. In 1997, AmBest decided to have its optometrists employed by separate corporations, from which it would lease the doctor-employees. Under South Carolina law, a professional corporation engaged in providing medical services to the public must be owned and controlled by licensed professionals; thus, AmBest solicited Dr. Juras to incorporate and own the professional corporation called Doctor's Exchange of South Carolina, P.C. ("Drex"). Dr. Juras then became the president and sole shareholder of Drex, which entered into a contract with AmBest (the "Services Contract") to provide optometric services at AmBest's business locations in South Carolina.

In the summer of 1999, disagreements arose between AmBest and Dr. Juras with respect to the Drex operations. First, the South Carolina agency responsible for the practice of optometry issued a cease and desist order to AmBest, requiring that it stop advertising free eye examinations to promote the sale of eyewear. AmBest appeared to ignore this cease and desist order, and Dr. Juras maintains that its failure to comply therewith jeopardized the medical licenses of the South Carolina doctors employed by Drex. Secondly, an AmBest employee in South Carolina initiated a claim against AmBest for sexual harassment. Dr. Juras contends that when she did not support AmBest in opposing this sexual harassment claim, and when she advised AmBest that she had been similarly harassed, AmBest began threatening her.

In late August 1999, Dr. Juras stopped performing optometric services at AmBest business locations in South Carolina, and began what she characterized as a personal leave of absence to obtain medical and legal advice. Dr. Juras contends that during her leave of absence, she consulted counsel and discovered the existence of legal problems in the business relationship between Drex and AmBest. One such problem was that AmBest had failed to calculate Drex's compensation in accordance with the Services Contract, resulting in Drex being undercompensated for eye examinations performed by its optometrists.

On September 10, 1999, Dr. Juras filed a Title VII sexual harassment claim against AmBest with the Equal Employment Opportunity Commission (the "EEOC"). On September 13, 1999, AmBest sought to exercise an option embodied in a contract between AmBest and Dr. Juras, called the Capitalization and Shareholder Agreement (the "Capitalization Agreement"), requiring Dr. Juras to transfer her ownership interest in Drex to another optometrist, when so directed by AmBest, upon ten days' notice. In addition, on September 14, 1999, AmBest notified Drex that it was exercising its right to terminate the Services Contract. That same day, AmBest demanded that Dr. Juras submit their disputes to arbitration under her employment contract with Drex (the "Employment Contract").

On September 20, 1999, Drex filed a two-count complaint against AmBest in South Carolina state court alleging, first of all, breach of contract with fraudulent intent and, secondly, unfair trade practices under South Carolina law. AmBest promptly removed this civil action

to federal court. When Dr. Juras and AmBest were unable to agree to a neutral arbiter for the arbitration that had been demanded by Am-Best on September 14, 1999, Dr. Juras, in late November 1999, filed her own suit against AmBest in South Carolina state court. Dr. Juras's lawsuit sought a declaratory judgment that the arbitration clause of the Employment Contract was unenforceable or, alternatively, that it had been breached. This proceeding was also removed to the district court, and the two civil actions were then consolidated for further proceedings.

Thereafter, the parties wrangled extensively over who should be involved in arbitration and concerning what issues should be arbitrated. On January 12, 2000, the district court conducted a hearing on those questions, and it ordered the lawsuits referred to arbitration and the litigation stayed pending the arbitration proceedings.[1] AmBest thereafter filed its complaint in arbitration with the American Arbitration Association (the "AAA"), asserting five counts against Dr. Juras: (1) breach of contract pursuant to the Capitalization Agreement for failing to transfer her ownership share of Drex as directed by Am-Best; (2) breach of the Capitalization Agreement by continuing to assert control over Drex; (3) breach of the Employment Contract by failing and refusing to arbitrate her disputes with AmBest; (4) intentional interference with contractual and economic relations between AmBest and Drex; and (5) requesting declaratory judgment that Dr. Juras had never owned Drex. In response, Dr. Juras counterclaimed against AmBest in the AAA proceeding, alleging, in four counts: (1) that she possessed no contractual obligation to arbitrate with AmBest; (2) breach of the Services Contract by AmBest with fraudulent intent

---

[1]During the district court hearing on January 12, 2000, the following exchange occurred:

| | |
|---|---|
| The Court: | I don't know whether the Title VII has even been brought yet but once it is brought it is going to the same place. |
| Counsel for Dr. Juras: | It is not ripe yet, Your Honor. It is pending. |
| The Court: | Pending investigation. That is between you all. |

J.A. 236.

for failure to account for and pay optometric fees to Drex; (3) unfair trade practices relating to AmBest's illegal practice of medicine through Drex; and (4) a request for transfer of corporate property to Dr. Juras.

On March 1, 2000, the AAA appointed Cotton Harness III of Charleston, South Carolina, to arbitrate the disputes between AmBest, Dr. Juras, and Drex. Arbitration proceedings were conducted from May 30, 2000, through June 2, 2000, and AmBest requested that Arbiter Harness render a detailed award and opinion. In its post-arbitration brief submitted to the arbiter, AmBest asserted that Dr. Juras

> broke off her relationship with America's Best in August 1999. Although she gave extensive testimony at the hearing about the circumstances leading up to her departure, that is utterly beside the point here. Dr. Juras has filed a charge of sexual harassment for which she seeks damages, including damages for emotional distress, *and those claims will be heard and resolved separately.*

J.A. 474 n.10 (emphasis added). The arbiter complied with AmBest's request for a full opinion, awarding Dr. Juras the sum of $37,500 in compensatory damages, plus $30,000 in attorneys' fees and costs (the "Award").

Dr. Juras and Drex then returned to district court and, on August 2, 2000, moved to enroll the arbitration award.[2] A footnote in their motion to enroll contained the following request: "As this proceeding has never involved Juras' sexual harassment claim which remains pending in front of the EEOC, Juras requests that a final order be issued and these actions be dismissed without prejudice to her future harassment claim." AmBest then, on August 9, 2000, filed its own motion in the district court, seeking confirmation of the Award. The

---

[2]The Federal Arbitration Act ("FAA") provides a procedure whereby a court may "confirm" an arbitration award, but makes no reference to such an award being "enrolled." 9 U.S.C. § 9. Because no party has contested the use of the term "enroll" in these proceedings, we treat the motion to enroll as being a request for confirmation under the FAA.

parties thereafter litigated in district court, inter alia, whether the Award should be confirmed without prejudice to the sexual harassment claim. AmBest objected to Dr. Juras's above-quoted request on several grounds, among them its assertion that the Award in fact included the Title VII sexual harassment claim. By its Order of February 8, 2001, the district court ruled against AmBest, and it granted confirmation of the Award without prejudice to Dr. Juras's Title VII claim. AmBest has timely appealed, and we possess jurisdiction pursuant to 28 U.S.C. § 1291.

## II.

We review de novo a decision of a district court to confirm an arbitration award. *Peoples Sec. Life Ins. Co. v. Monumental Life Ins. Co.*, 991 F.2d 141, 145 (4th Cir. 1993). In general, of course, we give great deference to such awards. *Upshur Coals Corp. v. United Mine Workers of America*, 933 F.2d 225, 229 (4th Cir. 1991). However, a district court's findings of fact underlying its decision to confirm an arbitration award are reviewed for clear error. *Peoples Sec. Life Ins. Co.*, 991 F.2d at 145 (finding that whether arbitrator was impartial was underlying factual finding entitled to clear error review).[3]

## III.

In its appeal, AmBest asserts that the district court improperly vacated or modified the Award by confirming it without prejudice to the Title VII sexual harassment claim (which it maintains was actually decided by Arbiter Harness). It also contends that Dr. Juras's Title VII claim is barred by the doctrine of res judicata. As explained below, each of these contentions is without merit.

---

[3]AmBest maintains that a de novo standard of review applies to all issues presented in this appeal. However, we have previously determined that a district court's conclusion that an arbiter was impartial is a finding of fact, and that such findings are reviewed for clear error. *See Peoples Sec. Life Ins. Co.*, 991 F.2d at 145; *see also First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 947-48 (1995) (review of confirmation of arbitration award "should proceed like review of any other district court decision, . . . e.g., accepting findings of fact that are not 'clearly erroneous' but deciding questions of law de novo").

### A.

While there were references made in the arbitration proceedings to Dr. Juras's sexual harassment claim against AmBest, Arbiter Harness carefully limited the evidence to the disputes raised in arbitration. For example, when AmBest's counsel asked an AmBest witness whether Dr. Juras had ever made a sexual harassment claim, the witness responded that she had not, but that she had simply "disappeared" and refused to perform services for Drex. When Dr. Juras's attorney asked the witness whether he was aware of other complaints about the alleged harasser, AmBest objected. Significantly, Arbiter Harness inquired of counsel on the relevance of this testimony, and explicitly limited its admission "to the contractual issues we've got before us."

Later in the proceedings, Dr. Juras's counsel asked a witness whether a letter from Dr. Juras to AmBest had asserted sexual harassment. In response, AmBest's attorney requested "an ongoing objection to the allegations of sexual harassment." Although Arbiter Harness permitted the inquiry, he noted that it did not go to a sexual harassment claim, and he limited its admission to "the purpose of notice."[4]

The Award, as rendered by Arbiter Harness on July 26, 2000, addressed only the nine claims submitted by the parties to the AAA. It recited, however, as part of the factual background for the disputes, that, "[i]n addition, Dr. Juras experienced alleged sexual harassment," and it found that "it appears that AmBest breached the various agreements and continue [sic] on an intentional course to undermine Juras' ability to function in her capacity as President of Drex and as an optometrist for AmBest." Arbiter Harness also found that "[a]s I see it, the breaches placed Dr. Juras in the position of significant exposure and AmBest cannot benefit from its actions by terminating her relationship with Drex and severing her from employment." There is nothing in the Award to indicate that the damages were to compensate for a sexual harassment claim, and Arbiter Harness did not undertake

---

[4]It is clear that Arbiter Harness did not admit the letter for purposes of proving any facet of a Title VII claim, but rather only as notice of the reason for Dr. Juras's sudden departure and alleged breach of contract.

to analyze any such claim. Thus, it is clear on this record that the Title VII claim was not arbitrated.

Nevertheless, AmBest maintains that the district court conducted a faulty legal analysis of the Award by failing to apply the proper legal standards for vacating or modifying an arbitration award. In fact, however, the court's review of the record was entirely proper, and it found that Dr. Juras's Title VII sexual harassment claim had not been arbitrated and that no award had been made in connection with it. Therefore, the decision to confirm the Award without prejudice to the Title VII sexual harassment claim did not either modify or partially vacate the Award.

B.

AmBest also asserts on appeal that the sexual harassment claim is barred by the doctrine of res judicata. That term, under applicable legal principles, encompasses the doctrines known as "issue preclusion" and "claim preclusion." *See In re Varat Enters., Inc.*, 81 F.3d 1310, 1315 (4th Cir. 1996). AmBest's contention that the sexual harassment claim should have been brought in the arbitration proceeding is actually an allegation of claim preclusion, i.e., that "the later litigation arises from the same cause of action as the first."[5] *Id.*

Regardless of whether Dr. Juras's sexual harassment claim arose out of the same transaction or series of transactions as the arbitrated claims, we have long recognized that claim preclusion does not apply "when the parties have agreed to the splitting of a single claim." *Aldridge*, 900 F.2d at 740 ("Since a principal purpose of the general rule of res judicata is to protect the defendant from the burden of relitigating the same claim in different suits, consent, in express words or otherwise, to the splitting of the claim prevents the defendant from

---

[5]The cause of action in a second litigation proceeding is identical to the earlier one when it arises out of the same transaction or series of transactions giving rise to the first litigation. *Keith v. Aldridge*, 900 F.2d 736, 740 (4th Cir. 1990). In such a circumstance, the decision in the earlier litigation "bars litigation not only of every matter actually adjudicated in the earlier case, but also of every claim that might have been presented." *Varat Enters.*, 81 F.3d at 1315.

invoking claim preclusion.") (internal citation and quotation omitted); *Restatement of Judgments* 2d § 26 (noting that one exception to general rule of claim preclusion is when "the parties have agreed in terms or in effect that the plaintiff may split his claim, or the defendant has acquiesced therein"). Most compellingly, AmBest advised Arbiter Harness that Dr. Juras's Title VII sexual harassment claim was not before him, and it specifically asserted in its post-arbitration brief to the arbiter that the "charge of sexual harassment" would be "heard and resolved separately." *See supra* at 5.

As our former colleague Judge Sprouse has properly observed, "[t]he course of litigation is determined, for the most part, by the actions of the litigants." *Young-Anderson v. Spartanburg Area Mental Health Ctr.*, 945 F.2d 770, 774 (4th Cir. 1991). Where the parties have agreed, in words or otherwise, to split a claim, a defendant may not invoke claim preclusion from the earlier action. *Id.*; *Keith*, 900 F.2d at 740. Indeed, the district court, by its Order of February 8, 2001, granting confirmation of the Award, expressly decided that the Title VII claim had not been arbitrated and that it was to be dealt with separately.[6] In so doing, the court found that "[a]fter being told by the arbitrator that only the breach of contract claims were at issue and after defendant specifically stated that the Title VII claim would be dealt with separately, plaintiff will not now be precluded from prosecuting her Title VII claim." The record on this point is clear, and these well-founded determinations of the district court are not clearly erroneous.[7]

---

[6]AmBest also maintains on appeal that the district court committed error by failing to consider whether Dr. Juras could have brought the Title VII claim in the arbitration. The court's determination, however, based upon the record, was that the parties agreed to split the claims and that the Title VII claim was to be dealt with separately. This finding renders any further analysis of that issue unnecessary.

[7]While the proper standard of review of findings of fact underlying a decision to confirm an arbitration award is clear error, see supra Part II and n.3, we would, on de novo review, agree with the district court that AmBest's position is without merit.

## IV.

For the foregoing reasons, the decision of the district court is affirmed.

*AFFIRMED*