**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any judge." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0327-20

ZVI GUITMAN, n/k/a HOWARD
ANTHONY,

      Plaintiff-Respondent,

v.

GLORIA PLOSZAY,

      Defendant-Appellant.

_____

Submitted on May 5, 2021 – Decided June 28, 2021

Before Judges Alvarez and Sumners.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Bergen County, Docket No. FM-02-1122-18.

Gilberto M. Garcia, attorney for appellant.

Pashman Stein Walder Hayden, PC, attorneys for respondent (Timothy P. Malone, on the brief).

PER CURIAM

In this matrimonial matter, defendant Gloria Ploszay appeals the Family Court order affirming an arbitration award and incorporating it into an amended dual judgment of divorce (AJOD). Ploszay argues that an ex parte email from plaintiff Zvi Guitman's counsel to the arbitrator inappropriately influenced the award's distribution of assets. She also argues that an interim consent order prior to the AJOD freezing her bank account funds should have been vacated upon entry of the AJOD. Having considered the contentions advanced on appeal and applicable law, we affirm.

I

The parties, married in 2011, filed for divorce in 2017. Resolution of financial issues was voluntarily referred to arbitration in a December 19, 2019 bifurcation order and dual judgment of divorce.

The arbitration hearing took place on February 4, 2020, without a court reporter present to transcribe the proceeding as set forth in the arbitration agreement. Due to the COVID-19 pandemic, subsequent testimony was taken via Zoom. Again, no court reporter was present, nor was the hearing recorded.

After the arbitrator heard the parties' testimony but before he issued an award, they entered into a March 4, 2020 consent order with the arbitrator

freezing $621,000 in Ploszay's bank account. The order provided that Ploszay's bank account "shall remain frozen until receipt of a future [c]ourt [o]rder."

After considering the parties' testimony and submissions, the arbitrator issued an award dividing their assets, with sixty-five percent going to Guitman and thirty-five percent to Ploszay.[1] Both parties objected to the arbitration award, including the need to address attorneys' fees and distribution of a litigation fund. The arbitrator found no error in the award except for reducing the amount Ploszay owed Guitman from $605,850 to $535,850.

Guitman moved before Judge Darren T. DiBiasi to confirm the arbitration award and to authorize release of funds held in Ploszay's frozen bank account to satisfy his share of the parties' assets. Ploszay cross-moved to vacate the arbitration award but did not object to Guitman's request to release the funds frozen in her account pursuant the consent order.

After argument, Judge DiBiasi rendered an oral decision. Recognizing the "narrow" exceptions to vacate an arbitration award under the New Jersey Arbitration Act, N.J.S.A. 2A:23B-1 to -32, the judge stated "[Ploszay] seems to be arguing that the [c]ourt should vacate the arbitrator's decision because of

---

[1] The details of the award and the arbitrator's reasoning are not relevant to this appeal and, thus, will not be discussed.

A-0327-20

evident partiality by the arbitrator, corruption by the arbitrator[,] or misconduct on the arbitrator's behalf." The judge noted that Ploszay contended "[Guitman]'s counsel exchanged ex parte communications with the arbitrator and that the arbitrator perhaps subsequently based his decision on these ex parte communications."

The judge found Ploszay's contentions were "baseless" because she "failed to identify coherently any specific instances of misconduct or partiality by the arbitrator." He ruled:

> There's no evidence, really none[,] that these types of communications impacted the final decision. And ex parte communications between counsel and arbitrator, even if they did occur in this case, . . . may perhaps undermine the party's confidence in the arbitration process. But this factor alone does not justify vacating an arbitrator's award[,] particularly a well-reasoned and thoughtful decision that was set forth by the arbitrator.

The judge added that there were other "broad attack[s] on the impartiality of the arbitrator[,]" but he did "not find any concrete examples of partiality." He further found "the arbitrator provided a detailed and comprehensive opinion[]"that was "well-reasoned[]"; "referenced both parties' submissions and testimony"; and "applied the evidence to the relevant law." He issued the AJOD incorporating the arbitration award. The same day, the judge also granted

4

Guitman's motion for distribution of $535,850 to Guitman in accordance with the AJOD.

II

Our review of a trial judge's order confirming an arbitration award is a question of law, which is de novo. Manger v. Manger, 417 N.J. Super. 370, 376 (App. Div. 2010) (citation omitted). Based on our review of the record, there is no merit to Ploszay's contention that the arbitration award should be vacated because it "was procured by corruption, fraud, or other undue means" or there was "partiality by an arbitrator . . . or misconduct by an arbitrator prejudicing the rights of a party to the arbitration proceeding." N.J.S.A. 2A:23B-23(a)(1) and (2).

We appreciate that an ex parte communication between one party's counsel to the arbitrator could undermine confidence in the arbitrator's neutrality and fairness in the proceeding. Ploszay, however, has made no showing that an alleged ex parte communication here influenced the arbitration award or deprived her of a fair resolution. See Remmey v. PaineWebber, Inc., 32 F.3d 143, 148 (4th Cir. 1994) ("It is well established that a mere appearance of bias is insufficient to demonstrate evident partiality. Arbitrators are not held to the ethical standards required of Article III judges . . . .") (quoting Peoples Sec. Life

5

Ins. Co. v. Monumental Life Ins. Co., 991 F.2d 141, 146 (4th Cir.1993)). In fact, there is no evidence that the arbitrator received the purported email. Ploszay's reasoning that "[a]ll one needs to do is read the way the [a]rbitrator refers to . . . [her] versus [Guitman] to conclude [that there was] partiality on the part of the [a]rbitrator" is purely speculative. Ploszay never produced the email to substantiate how it influenced the arbitrator's award to her detriment. Indeed, the arbitration award's in-depth analysis of the evidence and the parties' arguments indicated no hint that the arbitrator was impartial.

Ploszay also points out that the arbitrator violated the arbitration agreement by failing to record the arbitration proceedings. While true, she has made no showing that this failing prejudiced her before the arbitrator, the trial judge, or this court.

Lastly, Ploszay contends that the consent order freezing the funds did not survive the AJOD but "merged into" it, making it no longer in effect. In support, she cites the holding in Bauza v. Bauza, 201 N.J. Super. 540, 542-43 (App. Div. 1985), and argues that "[o]rders do not survive the entry of a judgment of divorce unless expressly preserved in it or reduced to judgment prior to entry of final judgment." She points to the AJOD, where it states: "this [c]ourt . . . amends its [j]udgment to confirm the . . . [a]rbitration decision . . . , which decision shall

not merge with but shall survive this [a]mended [d]ual [j]udgment of [d]ivorce and is made a part hereof . . ." and "all issues pleaded and not resolved in this [j]udgment are deemed abandoned." Furthermore, Ploszay submits the arbitration award concluded all issues prior to trial, including the consent order. We are unpersuaded.

Ploszay's contention that the consent order does not survive the AJOD was not raised before Judge DiBiasi, and therefore, it should not be considered because it does not "go to the jurisdiction of the trial court or concern matters of great public interest." Zaman v. Felton, 219 N.J. 199, 227 (2014) (quoting Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973)). However, for the sake of completeness, we address the contention, finding it without merit.

Ploszay's reliance on Bauza is misplaced. The order there concerned a pendente lite award of attorneys' fees, not the freezing of bank accounts pending determination of parties' rights to those funds, which the consent order did in this case. Bauza, 201 N.J. at 542-43. As evidenced by the provision to "remain frozen until receipt of a future [c]ourt [o]rder[,]" the consent order ensured that the disputed funds in Ploszay's account would not be depleted when the judge eventually addressed the distribution of assets in the AJOD. It makes no sense

to find the consent order unenforceable and not in effect when the assets referenced in the order were subject to distribution as detailed in the AJOD.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0327-20